W. A. Hays *v.* State.*

(*Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

R. R. BOND, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

Under an indictment in five counts Hays was found guilty, after a lengthy trial, of embezzlement, making false entries and fraudulent breach of trust. He appeals and says (1) that the evidence preponderates against the verdict, and (2) that the arguments of the Attorneys-General were improper and prejudicial. The State insists that the charges of embezzlement and making false entries are fully sustained.

After a careful examination of this voluminous record, we have no doubt of the guilt of this plaintiff in error of both embezzlement and making false entries. He was in charge of the bookkeeping and accounting, with the title of Cashier, of the Memphis branch of the American Insurance Company. He left Memphis suddenly on or about May 7th, 1928, and was later apprehended at a point in Texas, where he was living under a false name, and occupying a room adjoining that of a Memphis woman, with whom he had been associating before leaving Memphis, and who left Memphis about the time he did, and returned about the time he was brought back by an officer, some seven months later.

His statement made to the officer, his correspondence and the unusual manipulation of figures appearing in this record, show him to be a man of unusual shrewdness.

An audit of the books made after he left by independent auditors showed conclusively that more than $12,000, in the aggregate, of the remittances in small items sent in to the office from time to time by policy holders to liquidate deferred, or installment, note charges was never credited to these accounts in the proper note ledgers, although the payments apparently went

into the bank account of the Company, and were credited on detail report sheets on which were kept individual records of each policy and the payments thereon, and with which the regular cash account of the office was made to tally. The result of this manipulation was to keep the books of the Company always in balance, unless the note ledger was checked against them, and this appears not to have been done until Hays had left. His method apparently was to overdraw his personal account with the Company, and then credit himself in the cash books, which he kept, with sums in repayment equal in amount to his withdrawals; and then balance against such forced credit entries by the use of premium checks previously received and entered on the daily sheets, but which he had caused to be withheld from the note ledger. He so manipulated the deposits in the bank as to destroy the possibility of identification of the several deposits.

The proof clearly sustains the charge that the credit item to himself of $175 was a false entry, made with fraudulent purpose. The deposit slips are convincing. It is also clear that he converted the proceeds of the check of $44.60 to his account, this being the only item which appears not to have been passed through the Company's deposit account.

We deem it unnecessary to go into further details. The admirable brief of the Attorney-General gives a fuller statement and this we approve and adopt. It seems clear that plaintiff in error got from this Company by his manipulations from $5000 to $7000 of its funds, probably much more, although the State does not appear to have been able to show clearly just how or when he abstracted the difference between the aggregate of the sum shown on his personal account and the aggregate of the short-

age appearing on the note ledger. There is no preponderance against the verdict on the counts charging embezzlement and false entries. While it is possible that the conviction for fraudulent breach of trust might be sustained on the proof as to the single item of $44.60 above mentioned, the benefit of the doubt will be conceded to plaintiff in error as to this charge. The distinction between the Statutes defining breach of trust and embezzlement is pointed out in *Hill* v. *The State*, 159 Tenn., 297.

■ Much complaint is made of the argument of the State's attorneys, chiefly because of alleged infringement of the rule forbidding comment by the State's attorney on the failure of the accused to testify.

In *Staples* v. *State*, 89 Tenn., 231, relied on by counsel, the State's attorney dwelt directly, as an argument of guilt, on the failure of the defendant himself to testify. This, of course, was improper.

The language of our Statute (Shannon's Code 5601) reads, "The failure of the party defendant . . . . to testify in his own behalf, shall not create any presumption against him." The Act of 1887, here brought into the Code, was dealing with the right of the defendant personally to testify, and the language above quoted must be so limited in its application.

■ In *People* v. *Miller*, 278 Ill., 490, 116 N. E. 131, L. R. A. 1917E, 797, the Court, in discussing similar argument by State's counsel said: "He had a right to state that the defense had made no denial of certain facts that were proved by the State, and to argue to the jury the full force of the facts proved by the State. Such statements and arguments are not in violation of the Statute prohibiting the prosecutor from making reference to or

commenting on the fact that the defendant did not testify," citing authorities. In that case State's counsel had said: "What defense has been offered in answer to the State's case? Have you stopped to give that inquiry? I repeat, what defense has been made in this case?"

The rule, well supported, is thus stated by the Annotator in Ann. Cases 1917D, 279. "A general statement that the evidence adduced by the prosecution has not been contradicted is not a reference to the failure of the accused to testify. (See cases there cited). And again, "So the prosecuting attorney may call the attention of the jury to the fact that certain testimony is uncontradicted: (See cases cited.)

The distinction running through the authorities seems to be that while no argument of guilt shall be based on the failure of the defendant to himself take the stand, this immunity does not extend to his failure to offer other witnesses in his defense, in explanation and rebuttal of incriminating facts and circumstances adduced.

 We have carefully examined the language of the attorneys for the State of which complaint is made and we find none commenting on the failure of the defendant himself to take the stand. The case for the State was established in part by the testimony of an auditor who checked the books. The statement of counsel that, "no other auditor is introduced here. Bartel has not testified in this lawsuit," referring to another auditor, was not error. The statement that, "there is no explanation whatever to create any reasonable doubt of any kind or character regarding this $175," referring to the alleged false entry of these figures, was legitimate and proper. And so of the reference to the defendant's right to bring witnesses and records into Court, and that

394

nothing of this sort had been done. Nor do we think the specific reference to the failure of the defense to introduce R. M. Henry, Manager of this branch office under whom the defendant worked, was a violation of the rule. This was in no sense a comment on the failure of the accused to take the stand, but on a failure to introduce one apparently friendly to him, who of all men was in the best position to explain and justify the entries and records on which the State relied.

In commenting on the excuse of sickness or ill health suggested in behalf of the defendant for his sudden departure from Memphis, reference was made to the failure to introduce the doctor or doctors who had treated him. This was not a comment on the failure of the defendant to testify. And, finally, reference was made to the failure of counsel ''to introduce any evidence in this lawsuit, but rests his defense upon the weakness of the State's case.'' This was a general comment well within the rule. A case can be imagined where such a comment could refer only to the defendant's failure himself to take the stand, but it is by no means so here. Illustrations of other witnesses to whom this comment might well apply have been given above,—auditors, doctors, records, Manager Henry, etc. If the accused has suffered prejudice it was not because of reference to his failure to testify, but of his failure to offer any testimony whatever by those apparently in position to speak and available to him. Of this he cannot complain.

While certain language of the attorneys for the State was personal, and perhaps denunciatory to a greater degree than is altogether consistent with the semi-judicial position which counsel for the State occupy, the conduct of the accused justified severe comment. His guilt on

this record is clear. We are not of opinion that any errors were committed which affected the result.

The judgment is correct, except as to the conviction on the count charging fraudulent breach of trust.' So modified it is affirmed.