THOMAS LYNN SCHWEIZER, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

399 S.W.2d 743.

(*Nashville,* December Term, 1965.)

Opinion filed February 28, 1966.

JAMES O. NOLAND and WALTER A. SANFORD, Clarksville, for plaintiff in error.

George F. McCanless, Attorney General, and Robert F. Hedgepath, Assistant Attorney General, Nashville. Noel R. Bagwell, District Attorney General, Clarksville, prosecuted the case in the trial court.

Mr. Justice Chattin delivered the opinion of the Court.

In April 1964, a presentment was returned by the grand jury of Montgomery County in which the plaintiff-in-error, Thomas Lynn Schweizer, hereinafter referred to as the defendant, was charged with the murder in the first degree of his wife, Judy, on March 13, 1964.

He was tried and convicted of murder in the second degree and sentenced to a term in the State Penitentiary of twenty years.

Defendant has perfected an appeal in error to this Court. His first three assignments of error have as their basis the evidence preponderates against the verdict of the jury and in favor of his innocence.

In considering and passing upon these assignments, this Court is bound by the rule that a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendant the evidence preponderates against the verdict and in favor of his innocence. *White v. State,* 210 Tenn. 78, 356 S.W.2d 411 (1962); *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963).

■ Moreover, this Court, in reviewing the record on appeal from a conviction is governed by the rule, ''that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court.'' *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1962).

This Court in an opinion written for it by Mr. Justice Dyer said:

''The verdict of the jury, when approved by the Trial Judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence.'' *Bacon v. State,* 215 Tenn. 268, 385 S.W.2d 107 (1964).''

It appears from the record in this case that the defendant was a soldier stationed at Fort Campbell, Kentucky. He, his wife and infant child lived in a trailer near Clarksville. Defendant was off duty on March 13, 1964, the day of the murder. He left his trailer in mid-afternoon on that day and went to purchase some groceries at the request of his wife.

After purchasing the groceries, he met a friend of his in a beer travern. They drank beer in this tavern and later went to another tavern where they drank a bottle or two.

His friend drove him to see a Mr. Proctor about purchasing a small business, such as a beer tavern. His friend then drove him to his trailer. Defendant arrived at the trailer at approximately six thirty P.M.

Some time later, he left the trailer to purchase some baby food and soap which he had forgotten on his first trip.

On his return to the trailer, after purchasing these items, he stopped at a cafe and purchased four hamburgers.

When he arrived at his trailer he saw a Mr. Chester, an oil dealer, delivering fuel oil at a trailer nearby and requested him to fill his oil drum.

When he opened the door of the trailer he saw his wife on the floor. He felt of her pulse and then took his child and ran to the nearest trailer and asked for help.

The Sheriff was notified and arrived at the scene a very few minutes before eight P.M. He notified the Coroner and Mr. Whitehurst, an investigator for the State in the Bureau of Criminal Investigation.

Defendant's wife had been stabbed to death. There were more than twenty stabs or cuts in her chest, abdomen, back and hands.

The trailer was in perfect order. There was no evidence of a struggle or a burglary. The deceased's clothing was not disarranged in any manner.

The defendant was arrested and taken to the County Jail. He changed clothes in the presence of a Deputy Sheriff, Eugene Haynes, who saw what appeared to him to be blood under the right arm of defendant between his shoulder and elbow in the form of two finger smears.

His clothing was sent to the FBI laboratory in Washington. Four very small stains of human blood were found on his trousers and also a small quantity of blood-

stain inside the left sleeve of his jacket. There was not a sufficient amount of blood on the clothing to ascertain the blood type.

The defendant was released from custody on March 17, 1964, but was re-arrested after the grand jury returned the presentment the latter part of April 1964.

During the interval between his release and the return of the presentment, the defendant met a young lady who resided in Nashville. He dated her several times and proposed marriage to her. He told her he planned to go into business and had $3,000.00 to invest.

After defendant was re-arrested and returned to the Montgomery County Jail, he requested a trusty, who was serving a sentence there, to call his girl friend in Nashville and tell her to tell no one she knew defendant as it might involve her in his trial.

In December 1963, defendant purchased a family life insurance policy which provided upon the death of his wife he would be the beneficiary of $5,000.00.

In June 1964, defendant's Attorney, with the agreement of the District Attorney General, obtained an order from the trial court committing the defendant to the Central State Hospital for mental observation.

While in the hospital he met Elbert Hanvy. According to the testimony of Hanvy, the defendant told him he had stabbed his wife to death; that he was the beneficiary under an insurance policy on her life in the amount of $5,000.00; that it would take about $2,000.00 to bury his wife; and that he would invest the balance in a business venture.

The record further shows that after defendant was released from custody on March 17, he made no inquiries

of the investigating officers relative to the progress they were making in ascertaining the murderer nor did he offer to assist them in any way.

We think it is apparent from the foregoing review of the testimony in this record that it cannot be said the evidence preponderates against the verdict of the jury.

It is next insisted by defendant it was error for the trial judge to permit the Deputy Sheriff to testify he saw what he thought was blood smears on the arm of the defendant. It is insisted this was within the realm of expert testimony and the Deputy was not qualified to give such testimony.

We think the testimony was competent. The Deputy did not testify it was human blood. He testified he had seen blood on many occasions and that the smears on the defendant's arm were, in his opinion, made with blood. He expressed an opinion on what he observed in a manner the jury could understand.

In the case of *National Life & Accident Insurance Company v. Follett,* 168 Tenn. 647, 80 S.W.2d 92 (1935); the deceased had gone to his car in the snow and his wife and neighbor later found what appeared to them to be footprints in the snow. They testified they were of the opinion the footprints showed the deceased had slipped and fallen. In ruling this evidence competent, the Court said:

"We think there was no error in the action of the courts below in this particular. There is a class of opinion testimony from nonexperts that is admissible. In reality, such testimony describes observed facts in the only way in which they can be clearly described.

When facts perceived by the senses are numerous and it is difficult to describe them in an adequate manner to the jury, and at the same time the conclusion or inference to be drawn from such facts is simple and well within the range of common experience and 'the witness can relate what he has seen more accurately, as well as more easily, by stating his conclusion than by attempting to detail the evidential facts,' the conclusion or inference is properly admitted. 11 R.C.L. 568. And see discussion of opinion evidence Wigmore on Evidence, sec. 1917 et seq., and Jones on Evidence (2d Ed.) sec. 1241 et seq.

"Applications of this principle are found in our own cases of *Pennington v. State,* 136 Tenn. 533, 190 S.W. 546, *Scott v. Union and Planters' Bank & Trust Co.,* 123 Tenn. 258, 130 S.W. 757, and *Cumberland Telegraph, etc., Co. v. Dooley,* 110 Tenn. 104, 72 S.W. 457. In the case before us the statement of the witnesses that they observed a mark in the snow or sleet that looked as if made by someone who had slipped is perhaps the best and most intelligible description that could have been given of such mark. The subject of the inference, too, was well within the range of common knowledge."

To the same effect, see the case of *Casone v. State,* 193 Tenn. 303, 246 S.W.2d 22.

■ Defendant insists the trial judge erred in refusing to charge a special request tendered by defendant.

If such a request was made, it is not made a part of the bill of exceptions. For this reason, we cannot consider this contention. *Fonte v. State,* 213 Tenn. 204, 373 S.W.2d 445 (1963); *Koehn v. Hooper,* 193 Tenn. 417, 246 S.W.2d 68 (1951).

■ By defendant's fifth assignment, it is insisted the trial judge erred in charging the jury testimony of good character was always available to a defendant in a criminal case, and testimony of good character should be considered on behalf of the jury.

To support this insistence, it is argued this was error because the defendant did not testify in his own behalf and offered no character evidence whatsoever.

The trial judge charged the jury it could look to the defendant's previous good character, together with the other evidence, on the question of reasonable doubt and the jury should require stronger proof to convict a person of previous good character than one whose character was bad or unknown to the jury.

Several witnesses testified for the defendant and made references to his good character, although they were not specifically asked about his character.

Under the circumstances, we do not see how this charge could have been prejudicial to defendant. In any event, it was at best harmless. T.C.A. Section 27-117.

■ Defendant's sixth assignment complains of the action of the trial judge in overruling his motion for a new trial on the ground of newly discovered evidence that the witness, Elbert Hanvy, was unworthy of belief.

Several affidavits of officers at the Davidson County Workhouse were obtained after the trial to the effect this witness was a known criminal and was unworthy of belief. An affidavit of his brother, David Hanvy, was also obtained to the same effect.

David Hanvy was placed on the witness stand by the State at the hearing of the motion for a new trial and

he admitted he was confined in the Davidson County Workhouse at the time he made the affidavit; and that his fine and costs for the conviction for which he was serving was paid by defendant.

" 'The trial court has the right to determine the credibility of newly discovered evidence for which a new trial is asked, and if the Court is satisfied that, on a new trial, such testimony would not be worthy of belief by the jury, the motion should be denied. The newly discovered evidence will not be accepted as ground for a new trial unless the court can see that its admission on a new trial will probably produce a result more favorable to defendant than the verdict on the original trial. The question is not what the jury might do, but, supposing all the evidence new and old to be before another jury, whether they ought to return a verdict more favorable to defendant than the one returned on the original trial.' See also 23 C.J.S., Criminal Law, sec. 1461.'' *Rosenthal v. State,* 200 Tenn. 178, 292 S.W.2d 1 (1956).

The record also shows that Elbert Hanvy admitted at the trial he had been convicted of numerous felonies. It was also shown he was a known criminal and that at the time he made it known to the State defendant had confessed to him he had murdered his wife he was confined in the Davidson County Workhouse.

Thus, the jury knew the character of Elbert Hanvy and passed upon his credibility.

The affidavits were nothing more than cumulative evidence of his bad character; and for this reason it was proper for the trial judge to overrule the motion for a new trial. *Rosenthal v. State,* supra; *Ivy, v. State,* 197

Tenn. 650, 277 S.W.2d 363 (1955); *Ross v. State*, 130 Tenn. 387, 170 S.W. 1026 (1914).

Furthermore, we have carefully searched the record to see if there was any evidence tending to show how Hanvy could have learned of the various facts to which he testified other than from the defendant, and have been unable to find such testimony.

██ Finally, it is insisted the trial judge should have granted defendant's motion for a new trial because of the following alleged improper argument to the jury of the District Attorney General:

"But, Gentlemen of the jury, there is no conflict in the evidence. None whatsoever. What man has told you any different from what Elbert Hanvy told you? What right have you got to simply take a pencil and mark a big cross-mark through his evidence, saying, we just don't believe this? It stands uncontradicted."

It is argued this statement referred to the fact defendant did not testify. No exception was taken to this argument at the time it was made. Nor do we think it is an argument that defendant's guilt should be based upon or inferred from his failure to testify in his own behalf.

T.C.A. Section 40-2403 reads:

"The failure of the party defendant * * * to testify in his own behalf, shall not create any presumption against him."

This Code Section deals with the right of the defendant to not testify in his own behalf, "and the language above quoted must be so limited in its application." *Hays v. State*, 159 Tenn. 388, 19 S.W.2d 313 (1929).

 Argument by Counsel for the State to the fact that the evidence of the State is uncontradicted is not improper as drawing the attention of the jury to the failure of the defendant to testify. *Williams v. State,* 164 Tenn. 562, 51 S.W.2d 482 (1932).

In *Hays v. State,* supra, this Court approved the following:

"He had a right to state that the defense had made no denial of certain facts that were proved by the State, and to argue to the jury the full force of the facts proved by the State. Such statements and arguments are not in violation of the Statute prohibiting the prosecutor from making reference to or commenting on the fact that the defendant did not testify." *People v. Miller,* 278 Ill. 490, 116 N.E. 131, L.R.A. 1917E, 797.

"A general statement that the evidence adduced by the prosecution has not been contradicted is not a reference to the failure of the accused to testify. So the prosecuting Attorney may call the attention of the jury to the fact that certain testimony is uncontradicted." Ann.Cas.1917D, 279; *Hays v. State,* supra.

Moreover, in this respect the trial judge charged the jury:

"You must attach no significance to the fact that the defendant did not take the stand to testify in his own behalf. It is basic to our law that every person accused of crime is protected from compulsory self-incrimination, and the presumption of the defendant's innocence is in no way affected or weakened by the fact that he did not testify, for the burden of proof is

upon the state to establish his guilt, not upon the defendant to establish his innocence.''

We think the defendant was afforded a fair and impartial trial.

It results that all assignments are overruled and the judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, and WHITE, DYER, and CRESON, JUSTICES, concur.