VIRGIL BOOKER, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

456 S.W.2d 869.

Court of Criminal Appeals of Tennessee. April 30, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

George H. Garrett, Kingsport, for plaintiff in error.

David P. Pack, Atty. Gen., W. Collins Bonds, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Blountville, Edgar P. Calhoun, Kingsport, for defendant in error.

## OPINION

MITCHELL, Judge.

The presentment on which Virgil Booker, referred to as defendant or by name, was tried was returned by the Grand Jury in the Sullivan County Criminal Court on November 8, 1967, charging that he did, on October 22, 1967, unlawfully and feloniously commit the crime of robbery by the use of a deadly weapon, to wit; a pistol, and did take from the person of W. T. Livesay good and lawful money in the amount of $10.00; and did take from the person of Tom Light good and lawful money in the amount of $50.00 by force and violence and put them in fear.

The defendant in error will be referred to as the State.

The defendant was found indigent and the Court appointed Honorable George Garrett, attorney at law, as counsel for him on March 3, 1969.

On July 9, 1969, Virgil Booker, the defendant, was tried and convicted of armed robbery and the jury fixed his punishment at twenty (20) years in the state penitentiary upon which the Court pronounced judgment.

A motion for a new trial was made and overruled and the defendant appealed and assigned errors.

The proof offered by the State, which was evidently accepted by the jury and the trial judge, was to the effect that a poker game was in progress at the home of Leroy Sutherland in Kingsport, Sullivan County, Tennessee on the night of ——— October, 1967.

That those who participated in the game were Leroy Sutherland, Tom Light, W. T. Livesay (now dead), Tom Grills, Gene Allen and Tom Norris (or Marsh, now dead). James McMurray was present but not in the game. The money was on the table in front of the participants.

At about 12:00 midnight the defendant Virgil Booker, in the company of Harold Linebaugh and Mike Grills came into Leroy Sutherland's house where the poker game was in progress.

Linebaugh and Grills had guns in their hands. Booker did not have a gun at that time. During the time they were assaulting and robbing their victims, Booker armed himself with Linebaugh's pistol. Linebaugh said, "Leave your money laying boys, this is a stick up" and started picking up the money. Tom Light had about $50.00 on

the table in front of him which was taken by Linebaugh.

Witnesses said that W. T. Livesay, who since died of a heart attack was still sitting at the table when the robbery occurred and they thought he did have money on the table in front of him. The defendant and his companions, Linebaugh (now dead) and Grills committed vicious and brutal assault and battery on various participants in the poker game. Linebaugh pistol whipped Eugene Allen. He lost much blood, it took 17 stitches to sew up his head. Elmer Wagers was also pistol whipped.

Eugene Allen admitted he was then serving a sentence for obtaining money or goods by false pretenses, arising out of a business or contractual matter.

Linebaugh and Booker beat Elmer Wagers to such extent he had to be taken to the hospital and shave his head in order to sew it up. Booker kicked Wagers while he was down in the floor. James McMurray testified that Booker, Grills, and Linebaugh came in and robbed the poker game, that when he looked in the kitchen they were working Gene Allen over. That he saw Booker with a gun in his hand, that he knocked Wagers out of his chair.

The defendant Virgil Booker did not testify nor did he offer any proof.

The defendant's first assignment of error is:

"That there is no evidence to support the verdict of the jury.

"That the verdict of the jury is contrary to the law and the evidence.

"That the overwhelming weight of the evidence preponderates in favor of the defendant's innocence and against his guilt."

Counsel for the defendant has recognized and cited in his able brief the rules by which we are bound in considering the first assignment of error which is that a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendant the evidence preponderates against the verdict and in favor of his innocence. White v. State, 210 Tenn. 78, 356 S.W.2d 411 (1962); McBee v. State, 213 Tenn. 15, 372 S.W.2d 173 (1963).

[1] Moreover, this Court, in reviewing the record and appeal from a conviction is governed by the rule, "that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court." Holt v. State, 210 Tenn. 188, 357 S.W.2d 57 (1962).

The verdict of the jury, when approved by the Trial Judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107 (1964); Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743.

We find the defendant has failed to carry the burden of proving that the evidence preponderates against the verdict and in favor of his innocence.

■ We think there is ample evidence to support the verdict, that the evidence clearly shows that the defendant and his companions and accomplices went to this house at midnight, armed, with the purpose and intention of robbing the poker game, which they must have known or expected to be in progress. That the defendant and his confederates, acting together, upon entering the room where their victims were playing poker, announced their purpose and intention by declaring "this is a hold-up" or a "stick-up," "leave the money laying where it is." They soon pistol whipped, intimidated and subdued their victims. They threatened to kill some of them and after taking their money, as they left the scene together, they warned their victims that they would shoot the first man who came out the door, then they departed leaving some of their victims struggling in their own blood.

We find the verdict of the jury is consistent with the law and the evidence.

■ The defendant's second assignment of error is:—

"That there was a material variance between the indictment and the proof in that there was no testimony from W. T. Livesay that he was robbed by the use of a deadly weapon nor was there any testimony from W. T. Livesay that the Defendant took money from him by putting him in fear of his life."

With reference to this second assignment it is true there is no testimony from one of the victims of this atrocious assault and robbery. W. T. Livesay whom the proof shows was seated at the table and was one of the participants in the poker game, was an elderly man and

died of a heart attack between the date of the robbery and the date of the trial.

We think there is adequate, convincing proof that this victim Livesay was put in fear. The other victims were frightened, scared or put in fear. It is difficult to understand how Livesay could escape a sense of fear when he was present and witnessed the vicious and deadly pistol whipping administered by the robbers to Elmer Wagers, who was beaten down to the floor and later hospitalized, where his head was sewed up. If that wasn't enough to instill fear into Livesay surely the savage pistol whipping of Eugene Allen who suffered such severe wounds that blood was streaming down his face, and his head cut so that it took seventeen stitches to sew it up, with blood everywhere. No doubt Livesay wondered when they would set in upon him. They had cruelly pistol whipped Wagers because they said they did not like his looks. Livesay doubtless, quaked in his boots, in the realization that the slightest whim might cause them to turn on him. They had threatened to kill others in the game.

We think the jury could infer that Livesay was put in fear, by reason of the barbarous treatment meted out by the robbers to the victims in his presence.

The defendant Virgil Booker was in close company of his confederates Linebaugh and Grills. He came into the house with them, participated in the beatings inflicted on the victims, armed himself with a pistol and was one of the moving figures in commission of the crime and left the house with Linebaugh and Grills giving out warnings and threats.

The assignments of error are overruled and the judgment is affirmed.

We commend court appointed counsel for the valuable service he has rendered in zealously defending the rights of the defendant.

RUSSELL and GALBREATH, JJ., concur.