**John Grady MORRIS, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Jan. 19, 1976.

Certiorari Denied by Supreme Court April 26, 1976.

Jack R. Brown, Chattanooga, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Etrula R. Trotter, Asst. Atty. Gen., Nashville, Stanley Lanzo, Asst. Dist. Atty. Gen., Chattanooga, for defendant-in-error.

## OPINION

GALBREATH, Judge.

Plaintiff in error was convicted in the Criminal Court of Hamilton County of receiving stolen property and sentenced to 4 to 6 years in the penitentiary.

The usual attack is made on the sufficiency of the convicting evidence. The evidence showed that two paint sprayers had been stolen from A.D.T. Coating Corp. in June, 1973. On July 3, 1973, defendant was one of two persons who sold the identified sprayers to a Mr. Morgan, with the warning that the items were "hot". The sprayers in question were identified by an agent of the corporation because of splat-

ters of a special paint and because of a bent leg and broken rod. Defendant contends that only identification by serial number would have been adequate to sufficiently identify these objects as those stolen from the corporation. This is an untenable position since identification of purloined property can be made from any characteristic that makes an object unique. Most stolen objects have no serial numbers. The assignment is overruled. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963).

■ We sustain an assignment of error complaining of the argument of the prosecuting attorney to the jury as commenting extensively on the failure of the defendant to testify. In his opening argument, after the defense had announced that no proof would be offered, the attorney for the State included the following in his summation:

"Now, let's look at the facts from up there, and I want you to remember now, where are the contradictions? Where is there any proof to say that this was bought at Gilman's Paint? Where is there any proof that this was bought from a man out of town? Where is there any proof—and *I'm not commenting on the fact that the defendant didn't take the stand, because that is his God-given right,* but that doesn't mean that he can't bring in 200 witnesses and say, 'Yeah, I got this, I bought this thing and gave it to John Grady Morris and John Headrick. I gave it to them because they wanted to sell it, and I sold it to them because they wanted to sell it, and I sold it to them for $400.00', or there's nothing stopping anybody from having John Headrick come up here and take the stand, and say, 'Yeah, we bought it, we bought it from some guy, but I don't know what it is.' You were not even given that right. But I put every single thing I get my hands on in this case . . ."

Later, in final argument the assistant district attorney told the jury:

"*He has a constitutional right, and you're not to take any inferences, or insinuations, or any idea, or anything in your mind, because he doesn't take the stand, you know, you don't want to guess why he didn't, and that's okay, because the law says that,* but there is nothing in the law that says that he can sit there and tell you how you shouldn't ask questions why he didn't present some proof, if his story is what he tries to tell you through his arguments, because that's all you hear is arguments . . ."

The portions of the argument emphasized directed in most graphic detail the jury's attention to the refusal of the defendant to take the witness chair and explain away the inferences raised by the State's proof.

There are ways other than by direct assertion to make a point with an audience. Sometimes it is more effective to get across a message in a negative manner. By telling the Romans over and over again that Brutus was an honorable man, Mark Anthony, in his oration at Caesar's funeral, skillfully and thoroughly convinced them that Brutus was a dishonorable traitor and murderer and turned them into a raging mob. An effective television commercial instructed the listeners *not* to think about the very subject the advertisement was designed to provoke thought about. So in this case by pointedly referring to the constitutional right, or even more impactive "the God-given right", of Morris not to be a witness the assistant district attorney general emphasized the failure of the defendant to deny his guilt in person. So, too, in the very telling the jury that he was not commenting on the fact the defendant didn't take the stand, the prosecuting attorney most emphatically was making such comment.

■ It has been repeatedly held that it is not error for the prosecution to point out that no proof has been offered to rebut the evidence offered by the State. *Hays v. State*, 159 Tenn. 388, 19 S.W.2d 313. But in doing so no argument suggesting guilt may be based on the failure of the accused to take the stand or to assert any other constitutional right. Even in those instances where the argument does not deal directly with the failure of the accused to be a witness, unfair or suggestive implications

should be avoided. As Special Judge John Templeton, speaking for this Court put it:

"We do not wish to be understood to say that an argument literally restricted to a comment on failure to produce other witnesses always will avoid comment on failure of the accused himself to testify. Such an argument may be and unfortunately sometimes is a vehicle used by the State to get over to the jury by indirection an inference that the accused is guilty because he has not testified. The argument is particularly suspect when it contains a reference to the accused's common law presumption of innocence as his only witness. The comment never should be allowed as a part of the argument that the State's proof is unrefuted or otherwise because it borders so perilously on the proscribed area. Even in a case such as this where the evidence of guilt is clearly made out we would not hesitate to reverse and remand if we thought an argument, however subtle and indirect, told the jury it could infer the accused was guilty because he did not take the witness stand." *McCracken v. State*, 489 S.W.2d 48, 51 (Tenn.Cr.App.1972).

 It is regrettable that in so many cases such as this "where the evidence of guilt is clearly made out", overzealousness on the part of prosecutorial officials sometimes lead them into "over trying" their lawsuit so as to force reversal. But as noted one hundred years ago this month by our Supreme Court:

"Although we might be satisfied of the prisoner's guilt, yet it is our duty to see that he has a fair and impartial trial, and this he must have though costs may accumulate and punishment be long delayed." *Stokes v. State*, 64 Tenn. 619 (1875).

 Error is also noted in admitting over objection proof from a witness that he had "made a case" against the defendant for the Grand Jury in connection with another paint sprayer purchased from him. Such proof of other crime is highly prejudicial and inadmissible. *Mays v. State*, 145 Tenn. 118, 238 S.W. 1096. This error may have been rendered harmless by later instructions to the jury to disregard it and will not be repeated in the event this case is tried again.

 We have seriously considered holding the improper argument of the prosecuting attorney to have been harmless as to the issue of guilt. In that posture we could follow the action of the Supreme Court in *Smith v. State*, 527 S.W.2d 737 (Tenn.1975) where they recently agreed with some members of this Court that the doctrine set out in *Corlew v. State*, 181 Tenn. 220, 180 S.W.2d 900 (1944) authorizes appellate courts to grant remittiturs in criminal cases without reducing the degree of the offense. However, such a holding that the evidence of defendant's guilt is overwhelming and uncontradicted would give the effect to the argument of the prosecutor which he attempted to—and did—provoke from the trial jury. Further, the remarks in summation which we find improper are directed to the issue of guilt or innocence and not to the amount of punishment which the prosecutor was recommending the jury mete out as in *Smith v. State, supra*. Therefore, we cannot hold the error to be harmless beyond a reasonable doubt (see *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758), and we reverse and remand the case for a new trial.

RUSSELL and O'BRIEN, JJ., concur.