FILED

05/10/2021

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 10, 2021 Session

## STATE OF TENNESSEE v. MICHAEL KEITH CLARK

**Appeal from the Circuit Court for Montgomery County**
**No. CC2017-CR-312      Jill Bartee Ayers, Judge**

_____

### No. M2019-01613-CCA-R3-CD
_____

The Defendant, Michael Keith Clark, was convicted at trial of possession of 0.5 grams or more of methamphetamine with intent to sell or deliver, possession of a firearm with intent to go armed during the commission of a dangerous felony, and possession of drug paraphernalia. He received an effective sentence of four years in confinement followed by eight years on community corrections. On appeal, the Defendant argues that the evidence was insufficient to convict him of possession of a firearm with intent to go armed during the commission of a dangerous felony, that the trial court violated his right to confront the State's witness during cross-examination, and that the State improperly commented on his decision not to testify in its closing argument. After reviewing the record, the parties' briefs, and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Roger A. Maness and Colleen A. Hyder, Clarksville, Tennessee, for the appellant, Michael Keith Clark.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Christopher Dotson and Robert Nash, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

In this case, law enforcement agents searched the Defendant's residence after obtaining information from a confidential informant and completing a controlled purchase of drugs at the Defendant's residence. The agents seized guns, cash, drugs, and drug paraphernalia, resulting in the Defendant and Ms. Maryann Bensley[1] being charged jointly in a twelve-count indictment as follows:

| Count | Charge |
| --- | --- |
| 1 | Possession of 0.5 grams or more of methamphetamine with intent to sell or deliver |
| 2 | Possession of amphetamine with intent to sell or deliver |
| 3 | Possession of alprazolam with intent to sell or deliver |
| 4 | Possession of oxycodone with intent to sell or deliver |
| 5 | Possession of oxymorphone with intent to sell or deliver |
| 6 | Possession of hydrocodone with intent to sell or deliver |
| 7 | Simple possession of marijuana |
| 8 | Possession of a firearm (a shotgun) with intent to go armed during the commission or attempt to commit a dangerous felony (citing possession of methamphetamine with intent to sell or deliver) |
| 9 | Possession of a firearm (a handgun) with intent to go armed during the commission or attempt to commit a dangerous felony (citing possession of methamphetamine with intent to sell or deliver) |
| 10 | Possession of a firearm (a rifle) with intent to go armed during the commission or attempt to commit a dangerous felony (citing possession of methamphetamine with intent to sell or deliver) |
| 11 | Possessing a handgun with a defaced serial number |
| 12 | Possession of drug paraphernalia |

Ms. Bensley pleaded guilty to one of the charges, and the State proceeded to trial against the Defendant. Prior to trial, the State dismissed the charges in counts two through seven for possession of amphetamine, alprazolam, oxycodone, oxymorphone, and hydrocodone with the intent to sell or deliver and simple possession of marijuana. The State pursued the Defendant at trial on the remaining counts for possession of 0.5 grams or more of methamphetamine with intent to sell or deliver, three counts of possession of a firearm with intent to go armed during the commission or attempt to

---

[1] Although the indictment lists Ms. Bensley's name as Mary Bensley, we utilize her name as testified to by Ms. Bensley at trial.

commit a dangerous felony, possessing a handgun with a defaced serial number, and possession of drug paraphernalia. The counts pursued by the State were renumbered for purposes of trial.

The evidence presented at trial relevant to the issues on appeal showed that in the days leading up to July 21, 2016, Agent Daniel Gagnon with the Nineteenth Judicial District Drug Task Force ("19th Judicial District DTF") executed a controlled purchase of approximately five grams of methamphetamine at the Defendant's residence using a confidential informant. On July 21, 2016, agents searched the Defendant's residence. Agents Gagnon and Kyle Darnell entered the residence after S.W.A.T. officers secured it. Inside a bedroom, the agents found a wall-mounted weapon rack containing a rifle and two shotguns and a gun cabinet containing "long guns," including a .22 caliber rifle. Agent Darnell testified that he located a black gun safe in the bedroom and that he and other agents searched for the keys and eventually opened the safe. They found a bag of white powder crystalline substance on the top shelf of the safe along with three or four handguns. Agent Gagnon testified that he seized from the safe a .38 special caliber revolver with three rounds of ammunition, a Walther PK380 handgun with a magazine and ammunition, a handgun with its serial number scratched off, and a 9 millimeter caliber handgun with a round of ammunition in the chamber, a magazine, and six rounds of ammunition. Agent Gagnon testified that, because the 9 millimeter handgun had a round in the chamber, it could have been fired by just pulling the trigger. On cross-examination, Agent Gagnon testified that he did not know if any of the guns were used in a criminal transaction or the sale of narcotics.

A digital scale was found on top of a pool table in another room. Agent Gagnon testified that scales are used to weigh narcotics for distribution. Agent Gagnon recalled that he encountered the Defendant, Ms. Bensley, the Defendant's daughter, and the Defendant's daughter's boyfriend inside the residence.

Agent Gagnon interviewed the Defendant at the 19th Judicial District DTF office, and he testified that he vaguely recalled what the Defendant said to him during the interview. Agent Gagnon testified that "[i]n a nutshell," the Defendant told him that he sold narcotics in small quantities to maintain his lifestyle. Specifically, the Defendant informed Agent Gagnon that he would purchase between an eighth of an ounce and a quarter of an ounce of methamphetamine and sell it in smaller quantities. On cross-examination, Agent Gagnon testified that he did not obtain a written statement, that he did not capture a video or audio recording of the Defendant's verbal statement, and that he did not recall if a video or audio recording was produced.

Tennessee Bureau of Investigation Special Agent Cassandra Franklin-Beavers testified that she analyzed a substance sent to her by Agent Darnell and concluded it was

2.01 grams of methamphetamine. On-cross examination, she testified that two independent tests were conducted to confirm the results.

Ms. Maryann Bensley testified that she was sleeping on the couch in the living room, that the Defendant was asleep in a recliner chair next to the couch, and that the other two individuals present were asleep in another room when law enforcement entered the residence. Ms. Bensley agreed that she possessed methamphetamine at the time of the search and that it was in one of her bags. She testified that she stole the methamphetamine from a safe in one of the Defendant's bedrooms the night before because she was desperate and she knew the Defendant stored methamphetamine there. The Defendant possessed the keys to the safe, but, according to Ms. Bensley, the Defendant left the safe open the night she stole the methamphetamine. She explained that the Defendant had lived at the address for about four or five months and that she had visited him occasionally. She testified that the Defendant sold methamphetamine out of the residence and that people would enter the home and go back to the Defendant's room with him. She testified that individuals purchasing methamphetamine from the Defendant would sometimes trade items for the drugs, including firearms and jewelry.

During the search, law enforcement found pills, methamphetamine, cash, and what appeared to be a marijuana grinder in Ms. Bensley's purse and her bag. She testified that she was charged with twelve counts arising out of this case but pleaded guilty to one count and received an eight-year sentence. The State conditioned her guilty plea on her testifying truthfully in the Defendant's trial. She agreed that she had a pending violation of probation matter, but she clarified during re-direct examination that she was not promised preferential treatment in that matter in exchange for her testimony. She testified that she stopped living at the Defendant's residence around the middle of March of 2016, when she began living in her car and staying with friends. On re-cross examination, she testified that a utility service for the Defendant's residence was in her name, but she stated that it was never paid.

During the search, agents discovered several pieces of lawncare equipment outside of the residence. Ms. Bensley testified that the Defendant operated a lawn care business off and on for about a year leading up to the search.

The jury convicted the Defendant of one count of possession of 0.5 grams or more of methamphetamine with intent to sell or deliver, one count of possession of a firearm (a handgun) with intent to go armed during the commission of a dangerous felony, and one count of possession of drug paraphernalia. The jury acquitted the Defendant of charges for possessing a handgun with a defaced serial number and two counts of possession of a firearm with intent to go armed during the commission of a dangerous felony. The

Defendant received an effective sentence of four years in confinement followed by eight years on community corrections. This appeal followed.

## ANALYSIS

### A. Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to convict him of possessing a firearm with the intent to go armed during the commission of a dangerous felony. The Defendant asserts that the evidence fails to establish that he was in possession of the handgun subject to the conviction and that the State failed to present sufficient evidence corroborating Ms. Bensley's testimony as an accomplice with regard to the element of possession. The State responds that the evidence is sufficient to support the conviction. We agree with the State.

Reviewing the sufficiency of the evidence supporting a criminal conviction requires this court to first "examine the relevant statute(s) in order to determine the elements that the State must prove to establish the offense." *State v. Stephens*, 521 S.W.3d 718, 723 (Tenn. 2017). Next, we determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If the evidence is insufficient to support the finding of guilt beyond a reasonable doubt made by the trier of fact, its finding of guilt "shall be set aside." Tenn. R. App. P. 13(e). Once a defendant has been convicted, the presumption of innocence is replaced with a presumption of guilt on appeal. *Turner v. State*, 394 S.W.2d 635, 637 (Tenn. 1965). To overcome a presumption of guilt on appeal, the defendant bears the burden of showing the evidence presented at trial was "insufficient for a rational trier of fact to find guilt of the defendant beyond a reasonable doubt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982) (citing *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979)).

The State "is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence." *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This court may not reweigh or reevaluate the evidence, because "[q]uestions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Id.* at 236 (citing *Bland*, 958 S.W.2d at 659). After a guilty verdict has been entered, the testimony of the State's witnesses is accredited, and all conflicts in the

testimony are resolved in favor of the theory of the State. *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).

A defendant's guilt may be supported by direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). Whether the evidence underlying the defendant's conviction at trial was direct or circumstantial, the same standard of review applies. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Here, the Defendant challenges the sufficiency of the evidence underlying his conviction for possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. T.C.A. § 39-17-1324(a). "It is an offense to possess a firearm or antique firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." *Id.* A person acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). "A felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance of controlled substance analogue" is a dangerous felony. T.C.A. § 39-17-1324(i)(1)(L).

"Possession may be actual or constructive." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *Shaw*, 37 S.W.3d at 903). "[A]ctual possession refers to physical control over an item," while "constructive possession requires only that a defendant have 'the power and intention to exercise dominion and control over' the item allegedly possessed." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014) (quoting *Shaw*, 37 S.W.3d at 903). Whether a defendant constructively possessed contraband "depends on the totality of the circumstances in each case," and constructive possession "may be proven by circumstantial evidence." *Robinson*, 400 S.W.3d at 534 (citing T.C.A. § 39-17-419 (2006)).

A criminal defendant in Tennessee cannot be convicted "solely upon the uncorroborated testimony of an accomplice" *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citing *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994), *superseded by statute as stated in State v. Odum*, 137 S.W.3d 572, 583 (Tenn. 2004); *Monts v. State*, 379 S.W.34, 43 (Tenn. 1964), *overruled on other grounds by State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013)). "An accomplice is defined as a person who knowingly, voluntarily[,] and with common intent unites with the principal offender in the commission of the crime." *State v. Anderson*, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (citing *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). Generally, a

witness qualifies as an accomplice if "the alleged accomplice could be indicted for the same offense charged against the defendant." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997).

Our supreme court has stated that in order to properly corroborate accomplice testimony,

> "[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must be also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence."

*Shaw*, 37 S.W.3d at 903 (quoting *Bigbee*, 885 S.W.2d at 803). The corroborating evidence need only be "slight." *State v. Griffs*, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997). The jury determines whether sufficient corroboration exists. *Shaw*, 37 S.W.3d at 903; *Anderson*, 985 S.W.2d at 16.

The Defendant cites *State v. Nicholaus Jones*, No. W2018-01421-CCA-R3-CD, 2020 WL 974197 (Tenn. Crim. App. Feb. 27, 2020), *no perm. app. filed*, as support for his argument that he did not constructively possess the handgun found in the safe. In that opinion, the defendant and his codefendant were present when police executed a warrant to search a motel room. *Id.* at *1. Law enforcement found drugs, a handgun, and a digital scale in the motel room and $118 on the defendant's person. *Id.* at *2. The defendant was convicted at trial for several counts related to his possession of the contraband. *Id.* at *1. In reversing the defendant's convictions, a panel of this court concluded that the State failed to prove the defendant possessed the contraband because there was no proof regarding who rented the room or possessed the room key, how long the defendant had been in the room and how long he intended to stay, or whether "any of the bags or clothing in the room belonged to him." *Id.* at *10. The court also noted that the denominations of currency found on the defendant's person failed to suggest he had been selling the narcotics, and no contraband was found on the defendant's person, nor were there fingerprints shown to connect him with the contraband. *Id.*

When viewed in the light most favorable to the State, the evidence was sufficient to support the Defendant's conviction for possession of a firearm with the intent to go

armed during the commission of a dangerous felony. During the search of the Defendant's residence, Agents Gagnon and Darnell seized a white powder crystalline substance on the top shelf of a black gun safe in a bedroom that Ms. Bensley testified belonged to the Defendant. The substance was later identified as methamphetamine. Three or four handguns were located next to the methamphetamine, and Agent Gagnon testified that at least one of the handguns had a round of ammunition in the chamber and other handguns had magazines loaded with ammunition. The Defendant admitted to Agent Gagnon during an interview that he sold methamphetamine in small quantities to support his lifestyle. The agents also found methamphetamine in Ms. Bensley's purse. Ms. Bensley testified that she obtained the methamphetamine found in her purse by stealing it from the Defendant's safe. According to Ms. Bensley, the Defendant possessed the keys to the safe but left it open on the night she stole the methamphetamine. She testified that the Defendant had lived at the address for about four or five months and that she visited him occasionally. She also testified that the Defendant dealt methamphetamine out of the residence, that she knew he stored the methamphetamine there, and that people would enter the residence and go back to the Defendant's room with him. She explained that, on occasion, the Defendant would trade methamphetamine for items like guns or jewelry. In addition, agents found several pieces of lawn equipment outside of the residence and Ms. Bensley testified that the Defendant operated a lawn care business leading up to the search. The circumstances in this case are materially different than those at issue in *Nicholas Jones*, because the evidence presented a reasonable inference that the Defendant owned or controlled the gun safe and the contents inside and was not merely present inside the residence.

Part of the Defendant's argument rests on his contention that Ms. Bensley's testimony was uncorroborated. However, the Defendant's conviction was not based solely on uncorroborated accomplice testimony. *See Shaw*, 37 S.W.3d at 903 (A criminal defendant in Tennessee cannot be convicted "solely upon the uncorroborated testimony of an accomplice."). In addition to Ms. Bensley's testimony, the evidence showed that law enforcement completed a controlled purchase of drugs at the Defendant's residence in the days leading up to the search and that he admitted to Agent Gagnon that he sold methamphetamine in small quantities. As a result, there was additional evidence from which the jury could infer the Defendant possessed the methamphetamine and guns found inside the safe. In any event, the evidence presented at trial exceeded the minimal burden required for the jury to find that sufficient corroboration existed. *See Griffs*, 964 S.W.2d at 589; *Shaw*, 37 S.W.3d at 903; *Anderson*, 985 S.W.2d at 16. Accordingly, we conclude that the evidence was sufficient to support the Defendant's conviction for possession of a firearm with intent to go armed during the commission of a dangerous felony.

**B. Limitation of the Defendant's Right to Cross-Examine**

The Defendant argues that the trial court violated his right to confront the State's witness at trial by restricting his cross-examination of Agent Gagnon. A criminal defendant has the right to confront witnesses under the Sixth Amendment of the United States Constitution and Article I, section 9, of the Tennessee Constitution. To show that the trial court violated the right to confront, the defendant must show that "'he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, thereby exposing to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness.'" *State v. Black*, 815 S.W.2d 166, 177 (Tenn. 1991) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)); *see State v. Ariel K. Robinson*, No. M2020-00058-CCA-R3-CD, 2021 WL 1020913, at *33 (Tenn. Crim. App. Mar. 17, 2021)

However, the right to confrontation is not unlimited, because the trial court has the discretion to decide the propriety, scope, manner, and control of the cross-examination of witnesses. *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (citations omitted). Accordingly, "a defendant's right to confrontation does not preclude a trial court from imposing limits upon cross-examination which take into account such factors as harassment, prejudice, issue confusion, witness safety, or merely repetitive or marginally relevant interrogation." *State v. Reid*, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994) (citations omitted). Appellate courts may not disturb a trial court's limitation of cross-examination unless the defendant shows that there has been an unreasonable restriction of the right to confront. *Dishman*, 915 S.W.2d at 463 (citing *State v. Fowler*, 373 S.W.2d 460, 466 (Tenn. 1963); *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984)).

In the Defendant's arrest warrant, an affidavit completed by Agent Gagnon stated that, during the search, he seized the following items:

> 4 grams of Crystal Methamphetamine in two separate bags, nine 20mg Amphetamine pills (Sch. II), seven 1mg Alprazolam pills (Sch. IV), ten 30 mg Oxycodone pills (Sch. II), fifteen 15mg Oxymorphone pills (Sch. II), two mg Oxycodone pills (Sch. II), one 7.5mg Hydrocodone pill (Sch. II), twelve 10mg Hydrocodone pills (Sch. II), approximately three grams of Marijuana, five rifles, three shotguns, and six handguns to which one handgun had the serial number filed off of it and two handguns [w]ere loaded with a round in the chamber laying within inches of the aforementioned narcotics. Also found [w]ere several hypodermic needles, numerous digital scales and pipes used to smoke marijuana.

As discussed above, the State dismissed the charges related to possession of amphetamine, alprazolam, oxycodone, oxymorphone, hydrocodone, and marijuana prior to trial. An unredacted forensic report generated by Special Agent Franklin-Beavers listed three substances, one being the methamphetamine for which the Defendant was charged and the two others being Pregabalin and Butalbital for which the Defendant was not charged. At trial, the State offered a redacted forensic report which listed only the methamphetamine.

During the cross-examination of Agent Gagnon, the Defendant sought to discredit his trial testimony by questioning him about discrepancies between the redacted and unredacted forensic reports, the several drug charges the State dismissed prior to trial, and Agent Gagnon's grand jury testimony (the substance of which is not clear from the record). The Defendant attempted to raise through this line of questioning the inference that Agent Gagnon testified falsely at the grand jury, testified at the grand jury in disregard to the contents of the unredacted forensic report, or conducted an incomplete or incompetent investigation. The trial court permitted the Defendant to make an offer of proof.

Agent Gagnon testified that he did not know the narcotics seized during the search were sent to a lab, that he did not know that the forensic results from the lab were sent to his office, and that he never saw the report or a redacted report utilized by the State before going to testify before the grand jury in March of 2017. Agent Gagnon conceded that he could have obtained the forensic report by asking for it, but he stated that he did not know that it existed even though the report indicated it was addressed to him. He testified that reports that were sent to his office are password-protected and that he did not have access to them. He testified that he attempted to establish probable cause to support the charges sought with the grand jury by sorting the drugs found and using an identification reference book.

The Defendant argued that the cross-examination was relevant to create reasonable doubt on the counts pursued at trial. The State argued that the cross-examination was irrelevant and did not show Agent Gagnon was dishonest or testified inconsistently. The trial court found that the proposed testimony was irrelevant and confusing for the jury, credited Agent Gagnon's explanation of how he identified the drugs underlying the dismissed counts in the indictment, and declined to allow the Defendant to cross-examine Agent Gagnon regarding the dismissed counts and his related grand jury testimony. The Defendant declined the option to pursue the issue related to the additional substances in the unredacted forensic report. The Defendant appeals on the ground that the trial court violated his right to confront the State's witness at trial.

After review, we conclude the trial court's limitation of the Defendant's right to cross-examine Agent Gagnon was reasonable. During the offer of proof, Agent Gagnon testified that he sorted drugs seized from the Defendant's home and used a reference book to identify them. Then, without knowledge that the drugs had been tested and without knowledge that a forensic report had been rendered, he testified at the grand jury about his investigation in March of 2017. Grand jury proceedings are to remain secret, subject to limited exceptions. *State v. Carruthers*, 35 S.W.3d 516, 533 (Tenn. 2000); *State v. Penley*, 67 S.W.3d 828, 833 (Tenn. Crim. App. 2001). As we have observed, "'an accused seeking disclosure of grand jury testimony must demonstrate a particularized need for the materials sufficient to outweigh the policy in favor of secrecy.'" *State v. Khaleefa Lambert*, No. M2011-01797-CCA-R3-CD, 2013 WL 791618, at *8 (Tenn. Crim. App. Mar. 4, 2013) (quoting 22A C.J.S. *Criminal Law* § 750 (2012)). "'An allegation of possible inconsistencies, or speculation as to inconsistencies in the testimony of other witnesses without specific references to those alleged inconsistencies will not be adequate to show particularized need.'" *Id.* (quoting 22A C.J.S. *Criminal Law* § 750 (2012)). The Defendant merely speculates that Agent Gagnon's grand jury testimony was inconsistent with his trial testimony. Accordingly, he failed to demonstrate a particularized need to obtain the grand jury testimony and cannot show that the trial court erred in excluding it from trial.

We also conclude that the trial court did not err in excluding the testimony on the grounds that it was irrelevant and potentially confusing for the jury. By failing to identify any inconsistencies in Agent Gagnon's testimony, he failed to demonstrate the relevance of this evidence to the trial court. *See* Tenn. R. Evid. 401 (Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Additionally, pursuing this line of questioning would have required the jury to consider the effect of Agent Gagnon's grand jury testimony, an unredacted forensic report referencing controlled substances which the Defendant had not been charged with possessing, and evidence relating to drugs not in the unredacted forensic report but for which charges had been filed and dismissed. These issues posed a risk that the jury would confuse the issues before it, and the trial court properly limited the cross-examination to mitigate that risk. *See* Tenn. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). The trial court permitted the Defendant to cross-examine Agent Gagnon extensively about his investigation leading up to the search, the search itself, and the interview during which the Defendant confessed to selling drugs. Therefore, the trial court did not violate the Defendant's right to confrontation, and the Defendant is not entitled to relief.

## C. Improper Closing Argument

During closing argument and related to the issue on appeal, the Defendant conceded that law enforcement found methamphetamine and guns in the residence; however, he challenged whether the residence was his, whether he possessed the methamphetamine or guns, whether he intended to possess the guns during the commission of a dangerous felony, and whether he admitted to Agent Gagnon to selling methamphetamine. During rebuttal, the State began its argument by stating, "The proof you heard yesterday was uncontroverted. That means, it wasn't negated. It wasn't denied."

The Defendant's trial counsel objected on the ground that the State commented on the fact that the Defendant did not testify, and the prosecution agreed to move on from that line of argument. The Court stated, "Yes. That's clear in the instructions. He's not required to do that." The Court also emphasized, "It's the State's burden." Oral argument proceeded to its conclusion. After the jury was released to begin deliberation, the Defendant again objected to the State's argument and moved for a mistrial. The trial court denied the Defendant's motion for a mistrial, and it explained, "There are clear instructions that the Defendant cannot be penalized in any way for his failure to testify, and I think that takes care of it." In its written order denying the Defendant's motion, the trial court found,

> The State did not improperly submit to the jury that its evidence was uncontroverted. The State's mention of the uncontroverted nature of the evidence did not constitute improper comment under either option of the test argued by the Defendant. Further, this Court's instructions to the jury on two separate occasions established that the jury could not make any inference whatsoever against the Defendant for his failing to testify at the trial, and the jury is presumed to have followed those instructions. This issue is without merit.

The Defendant contends that the prosecutor's statement improperly suggested that he had an obligation to rebut the State's case, and he argues that the statement was prejudicial and was made at a time "when neither the trial court nor [his trial counsel] could do anything to cure the harm without risk of exacerbating it." The State argues that the prosecutor's argument was not a comment on the Defendant's failure to testify and that it was in response to the Defendant's closing argument. The State contends that the argument was meant to highlight the strength of the State's case.

Both the United States Constitution and the Tennessee Constitution "guarantee criminal defendants the right to remain silent and the right not to testify at trial." *State v. Jackson*, 444 S.W.3d 554, 585 (Tenn. 2014). Accordingly, the prosecution should not improperly comment on a defendant's decision not to testify directly or indirectly. *Id.* at 586, 587. To determine whether a prosecutor's remark amounts to an improper comment on the right to remain silent or not testify depends on "(1) whether the prosecutor's manifest intent was to comment on the defendant's right not to testify; or (2) whether the prosecutor's remark was of such a character that the jury would necessarily have taken it to be a comment on the defendant's failure to testify." *Id.* (citation omitted). If a prosecutor's argument is found to be improper, we determine if the improper argument amounts to reversible error by considering whether the comments had a prejudicial effect on the jury. *State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999).

Generally, "[a]rgument by [c]ounsel for the State to the fact that the evidence of the State is uncontradicted is not improper as drawing attention to the jury to the failure of the defendant to testify." *Schweizer v. State*, 399 S.W.2d 743, 748 (Tenn. 1966); *see State v. Rice*, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982). However, "a prosecutor's comments on the absence of any contradicting evidence may be viewed as an improper comment on a defendant's exercise of the right not to testify when the defendant is the only person who could offer contradictory proof." *Jackson*, 444 S.W.3d at 586 n.45.

Here, during the State's rebuttal argument, the prosecutor discussed that the evidence was uncontroverted, unrebutted, and not denied. This court has previously held that these types of arguments generally do not improperly comment on the Defendant's exercise of his right to not testify. *See Schweizer*, 399 S.W.2d at 748; *Rice*, 638 S.W.2d at 427. The prosecutor's argument cannot be identified as either an intentional comment on the Defendant's right to not testify or one that the jury would necessarily have taken as a comment on the Defendant's failure to testify. *See Jackson*, 444 S.W.3d at 586-87. The prosecutor made the argument during rebuttal in response to the Defendant's argument at trial that he conceded that methamphetamine and guns were seized from the residence, and the prosecutor's argument did not reference his failure to testify specifically. Additionally, Ms. Bensley or one of the two other occupants of the residence could have offered contradicting proof, *see Jackson*, 444 S.W.3d at 586 n.45, so the prosecutor's argument that the evidence was unrebutted was not improper. Accordingly, we conclude that the prosecutor did not improperly comment on the Defendant's right to not testify and that the Defendant is not entitled to relief.

**CONCLUSION**

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE