Roy E. Holt

*v.*

State of Tennessee.

357 S.W.2d 57.

(*Nashville,* December Term, 1961.)

Opinion filed May 4, 1962.

Robert S. Clement, Dickson, Val Sanford, Nashville, for plaintiff in error.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, Nashville, for State.

Mr. Justice White delivered the opinion of the Court.

The plaintiff-in-error, defendant, was found guilty of an assault with intent to commit voluntary manslaughter and sentenced to serve two years in the State Penitentiary. A motion for a new trial was seasonably made, and overruled. The defendant has appealed and has assigned as error:—(1) The refusal of the Trial Court to grant a new trial on the ground that the evidence preponderates against the verdict found against the plaintiff-in-error and in favor of his innocence. (2) The Court erred in admitting as evidence certain testimony, detailed in the brief filed by the plaintiff-in-error, all of which it is claimed was prejudicial to his rights.

In order for the Court to pass upon these matters, it is necessary to outline briefly the evidence upon which the defendant was found guilty as aforesaid. The facts are in sharp dispute. However, it does appear without dispute that Forrest Darnell was the driver of a Greyhound bus which left Nashville, Tennessee at about 10:15 o'clock P.M. on February 3rd, 1961 bound for Dickson, Tennessee and other points west. All seats on the bus were taken, and some thirteen passengers were riding in the aisle. The bus arrived in Dickson, Tennessee, at about 11:30 o'clock P.M. and proceeded to the bus station located in that city.

Roy Holt, the defendant, a resident of Dickson, was a passenger on this bus. He was at the time employed by the Pearl Machinery Company in Nashville, and had been working on that day. Ordinarily, he rode home with a friend but on this particular day the man with whom he rode did not come by to pick him up at the appointed time and place.

Three other young negroes, Douglas Hughes, Willie Lee Hogan and James Hall, who worked in Nashville and lived in Dickson, were also passengers on this bus.

The State's witnesses all agreed there was some difficulty between certain of these young negroes and the bus driver, and that a fight, or a series of fights, resulted therefrom. The bus driver, Forrest Darnell, was cut in three separate places, across the abdomen, under the right arm, and in the back above the left hip.

Counsel for plaintiff-in-error observed in the brief filed that "as to the nature of the difficulty, the course of the ensuing fights and the manner of the infliction of these wounds, there are as many versions as there are

witnesses for the prosecution, and there is little agreement between any two of them''.

The bus driver testified that the defendant was a passenger on his bus and that his destination was Dickson, Tennessee. When he arrived in Dickson he stepped off of the bus and was expecting eleven of his passengers to leave the bus at this point. When only two or three had left the bus Forrest Darnell heard an argument going on inside the bus between some colored and white passengers, including the defendant, Roy E. Holt. The driver re-entered the bus and found the passenger Hogan sitting on a suitcase in the aisle and when he said to Hogan ''come on off the bus and let these passengers off'' Hogan began to curse. However, he did follow the instructions of the driver, in that he got off of the bus but kept cursing. The defendant was still on the bus at this time. According to Darnell, Hogan struck at him and knocked his glasses off or almost knocked them off, at which time Darnell went to a telephone 150 or possibly 200 feet away from the scene and called the police. Upon his return he found that the four colored boys in question, including the defendant, had walked away from the side of the bus and one of them asked if he, Darnell, had called the police. Upon stating in the affirmative, one of the boys by the name of Hughes cursed the bus driver in the presence of all the others, including the defendant, and then this same man came forward to the bus driver and struck him. This man was joined by another by the name of Hogan at which time the bus driver ran and jumped in the bus and called for help. The defendant and his companions were standing near the bus at the time cursing and when certain of the people on the bus came to the aid of the driver a general

fight ensued and lasted for about ten minutes, and during a part or all of this time the defendant was within ten or twelve feet of Darnell.

The driver says he picked up a board about five inches long and three inches wide and struck Hughes in the head with it and knocked him to his knees and at about this time "I looked to my right and there came Holt just making a flying tackle at me. But when he hit me I was off balance and he knocked me down but when I got up—I got up just as quick as I could, my belt fell off of me."

The bus driver further testified "when my belt fell off of me, I looked down at my stomach, and my shirt was cut all the way across and I was bleeding". The belt and the shirt were both exhibited to the jury.

The witness testified that he was cut from "the left hip to his right hip across his stomach (abdomen) then I was cut from under my arm, then I had a stab in my back just about my left kidney".

Darnell was then asked if he knew who made this cut on him or this stab and his reply was "yes sir I certainly do", and then he testified that the defendant, Holt, was the guilty party. He did not know, however, what instrument Holt had used to cut him. Thereafter the bus driver was taken to the hospital where he was examined and treated and where he remained for a period of eight days.

The driver said he could not identify the defendant Holt because of his resemblance to a passenger with whom he had had some prior trouble. He had never had any trouble at all with the defendant before this occurrence.

The witness DeHosse testified that he was a passenger on the bus on the night of this occurrence, that he was stationed at Millington U. S. Naval Base near Memphis, Tennessee, and was on the way to his station when this difficulty occurred. He said that these four colored boys got off of the bus and that they were cursing and that the defendant, Holt, was one of them.

This witness said that he engaged in this free-for-all fight and that Holt was engaged in it also. He testified that Holt fell on Mr. Darnell and that another witness kicked Holt ''a couple of times to get him away from Mr. Darnell, and then I saw that Mr. Darnell was cut. He had blood across the front of his shirt and I ran to a house for an ambulance.''

The witness said: ''I saw the defendant, Holt, on top of Mr. Darnell with his right hand raised and bringing it down with a slashing motion * * *. Mr. Darnell got up, and he was holding his stomach and there was blood across his stomach''.

On cross-examination the witness DeHosse testified that ''this boy (Holt) come at him and tackled him and knocked him to the ground''. (Meaning Darnell). This same witness said again on cross-examination that defendant Holt cut the driver but that all of them, meaning the four colored boys, were mixed up in it.

Another witness by the name of Robert Lilly, a member of the armed services, testified that he, too, was on the bus and he corroborates the testimony of Darnell with reference to one or more of the colored boys interfering with the passengers alighting from the bus. That Darnell after returning from calling the police stepped into the bus and asked for help. He went to the aid of

Darnell and as he got off of the bus one of the colored boys hit him. He also said "the defendant—he went down on top of the bus driver and the Marine was in uniform —he just wanted to pull him off of the bus driver and that is when the bus driver told me he had been cut".

He testified that there was no one else around the bus driver when he got up except the defendant, Holt, and that the driver was cut.

This witness on cross-examination said that when he saw the bus driver go down he was standing within ten feet of him and near the edge of the bus on the left rear.

The witness Buchanan said that he observed the fighting and that all of the colored boys were on the bus driver but that he could not identify the one that cut the driver.

The defendant, Ray Holt, testifying in his own behalf, denied categorically and in detail all charges made against him. He denied that he saw any drinking on the bus. He denied there was any difficulty on the bus after it had stopped in Dickson. He denied any knowledge of any fighting between the other colored boys and Darnell and the other witnesses who testified in the case and, as a matter of fact, he was asked: "About how long did you stay around the bus station after you got off?" A. "No more than to get off the bus and walk down the street."

Douglas Hughes testified that he was on the bus and that no difficulty occurred that he knew anything about even off the bus until he heard a noise behind him as he walked up the street. Holt, Hall and Hogan had preceded him up the street, but just after he, Hughes, heard a noise back of him he heard Holt say "to run". This wit-

ness was carrying a heavy suitcase and was unable to run but at about the time of the warning by Holt he was struck by a 2 x 4 in the hands of Darnell. He testified that four or five white people were beating him with sticks or big planks, and as soon as he was able to extricate himself he ran up College Street. Shortly thereafter he was picked up by the police. He denied ever striking at anybody and denied any knowledge of any wrongful doing on the part of this defendant or on the part of any of the other colored men on the bus. He denied specifically that the defendant or any one else did any cursing. He denied also the possession of a knife, razor or other instrument that might be used in cutting, and the defendant, Holt, testified to the same effect. He claimed he was with Holt from the time they got off the bus until he was struck with the board.

An examination of the testimony of Willie Lee Hogan reveals that he was on the bus, but went to sleep when he left Nashville and slept all the way to Dickson, at which point he was awakened by Holt. He denied cursing anybody or engaging in any difficulty whatsoever. He got off the bus and started walking away when he heard Holt say "run" and when he looked around he saw a gang coming after him. He did run to a filling station on the corner of College Street where he was apprehended shortly thereafter by the police. He denied engaging in any fight, and his statement is that the only time that Holt could have been near the bus driver was when he passed him as he got off the bus, when they were about three steps apart.

James Hall testified that he was on the bus with the other colored boys and that he was seated beside the

defendant, Roy Holt; that Hogan was sitting on a suitcase in the aisle and Hughes was standing up behind him; that when they arrived in Dickson Holt was still asleep and upon being awakened he then woke Hogan up and then all four of them got off the bus, Hogan being in front. Holt was immediately back of Hall. He testified further that as they walked up the street between the bus station and the filling station that Holt said "let's run". He said he then looked and saw a crowd approaching them from the rear with sticks and rocks. He denied that he engaged in any rock throwing or fighting and he did not see the defendant stop or throw anything. That the last time he saw Holt that he, Holt, was running up the highway toward Nashville. He testified that somebody shot him and then the police picked him up and took him to the hospital.

The Chief of Police of the City of Dickson, Tennessee, who had been serving in that capacity for a period of nine years, testified that he knew the reputation of the defendant in the community in which he lived and that such reputation was good. Based upon that reputation he believed that the defendant was entitled to full faith and credit on his oath in a court of justice.

█ In our opinion the evidence does not preponderate against the verdict and in favor of the innocence of the accused, but it fully supports the verdict.

A careful search of this record shows that the Trial Judge was very careful to protect the rights of this defendant and accorded to him the same consideration due any other person charged with crime upon the trial of his guilt or his innocence in connection therewith.

This defendant was ably represented by counsel on the trial of this case and his cause has been represented with equal force in this Court.

Complaint is now made that there is little agreement between the witnesses for the State as to the happening of the events out of which this unfortunate affair grew.

■■ In considering this case on appeal, we do so with the presumption that the defendant is guilty as found by the jury and approved by the Court. It must be remembered that the presumption of innocence disappears after a conviction and the defendant is presumed to be guilty here. The jury and Trial Judge see and hear the witnesses face to face and are in a far better position to determine who is correctly detailing the truth of the matter than are we who see only the record. *Ferguson v. State*, 138 Tenn. 106, 196 S.W. 140; *Christian v. State*, 184 Tenn. 163, 197 S.W.2d 797; *Gang v. State*, 191 Tenn. 468, 234 S.W.2d 997.

The Court in an opinion rendered for it by Mr. Justice Felts said:

"A guilty verdict, approved by a trial judge, accredited the testimony of witnesses for the state and established their credibility, and displaced presumption of defendants' innocence, raised a presumption of their guilt, and put upon them, on appeal, the burden of showing that the evidence preponderated against the verdict, and in favor of their innocence." *Anderson v. State*, 207 Tenn. 486, 2nd headnote, 341 S.W.2d 385.

In the charge of the Court to the jury the Trial Judge said:

"The jurors are the sole and exclusive judges of the facts and the credibility of the witnesses and the weight to be given their testimony. In forming your opinion as to the credibility of a witness you may look to the proof, if any, of his general character, his manner and demeanor on the witness stand, the consistency or inconsistency of his statements; their probability or improbability, his ability and willingness to speak the truth, or to swear a falsehood, his intelligence and means of knowing the facts about which he testifies, and from the whole give to the testimony of each witness that weight to which you think it is entitled.

\*     \*     \*     \*     \*     \*

"If there are conflicts in the testimony of the different witnesses, it is your duty to reconcile such conflicts, if you can, without arbitrarily rejecting the testimony of any witness, but if you cannot reconcile such differences, it is your duty to accept the true and reject the false."

██ It has been the law of this State established over a period of its existence that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court. In this case the evidence of the State and the defense is diametrically opposed. Under these circumstances it is the duty of the jury to follow the instructions of the Judge, as aforesaid, and to arrive at the truth of the situation, the truth being the justice in the case.

It must be remembered that the jury found this defendand guilty of inflicting serious cuts and wounds on the body of Forrest Darnell which could have brought the

loss of his life, but fortunately fell short of that. However, the proof is from the defendant himself, his wife and the Chief of Police of the City of Dickson that the defendant is a person of good character, a good husband and the father of five children, all of which the jury, no doubt, took into consideration in fixing the punishment at only two years in the State prison.

The exact form of the verdict of the jury is:

"We find the Defendant guilty of assault with intent to commit voluntary manslaughter, and fix his sentence at 2 years in the state prison."

The maximum sentence under Section 39-603, T.C.A. is imprisonment in the penitentiary for a term not exceeding five years for one convicted of an assault upon another, with intent to commit any felony or crime punishable by imprisonment in the penitentiary.

Section 40-2703, T.C.A. provides:

"In no case shall any person convicted of a felony be confined in the penitentiary for less than twelve (12) months. * * *"

The defendant was convicted of a felony, as aforesaid, but neither the jury nor the Court fixed the minimum sentence to be served by this defendant.

Section 40-2708, T.C.A. provides:

"40-2708. Sentence for definite period construed as indeterminate.—If through mistake or otherwise, any person shall be sentenced for a definite period of time for any offense, such sentence shall not be void, but the person shall be deemed to be sentenced nevertheless as provided by the terms of secs. 40-2707—40-2710; and

he shall be entitled to all the benefits and subject to the liabilities under said sections in the same manner and to the same extent as if sentence had been pronounced in the terms and manners required thereby."

■ In the brief filed by the Attorney General he has suggested that the sentence be modified so as to provide that the punishment shall be confinement in the State Penitentiary for not less than one year nor more than two years. We accede to his request.

Therefore the sentence is corrected to read that the defendant shall serve a term of confinement in the State Penitentiary for not less than one nor more than two years.

All assignments are overruled, but the decision of the lower Court is modified to the extent indicated, and as so modified the same is affirmed.