**Schultz ROBINSON, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Oct. 23, 1974.

Certiorari Denied by Supreme Court March 10, 1975.

Wm. R. Stanifer, Tazewell, for plaintiff-in-error.

David M. Pack, Atty. Gen., Bart C. Durham, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, and J. D. Estep, Jr., Asst. Dist. Atty. Gen., Tazewell, for defendant-in-error.

OPINION

DWYER, Judge.

This is an appeal in the nature of a writ of error from a conviction by a jury with judgment pronounced thereon of committing the offense of murder in the second degree with confinement for not more than ten years. The thrusting question advanced by retained counsel goes to the sufficiency of the circumstantial evidence to sustain the conviction.

A narration of the evidence is of necessity to weigh the merits or nonmerits of the assignment of error.

The deceased, Glenn Buckner, resident of Claiborne County, disappeared from his home on the evening of May 2, 1972. That his remains were discovered by squirrel hunters on October 7, 1972, in a remote area of Claiborne County known as Raven Ridge in the vicinity of Lone Mountain is not disputed. His skull was marked by holes. A .25 caliber slug was found on the ground in some hair, where the head had apparently lain. A medical expert testified that the probable cause of death was the wounds inflicted to the head.

The deceased was a dealer in the illegal sale of whiskey and was known to carry large sums of money. None was found among his remains.

The deceased's car was found behind the Clairborne County High School on the af-

ternoon of May 3, 1972. A search of the vehicle revealed large quantities of blood on the front seats and floor boards. From the dashboard three spent .25 caliber cartridge cases were found with another one on the seat. A subsequent search of the vehicle by a T.B.I. agent uncovered another. A spent .25 caliber slug was removed from the front door; it is readily apparent from these facts the decedent was killed in his car.

The news that the vehicle and the .25 caliber shells had been recovered came to be known by one Arthur Hurst who called the sheriff and reported having given a .25 caliber automatic to the defendant on May 1, 1972, for the purpose of sale. The sheriff went to the residence of this witness. When it was made known to the sheriff that the witness had given the same gun to the defendant a couple of months before and had then test fired the gun, the sheriff conducted a search for the ejected shell at the sight of the test firing. The shell hull was recovered by the sheriff.

A ballistics expert testifying for the state related that the spent hulls found in the car and the spent hull found by the sheriff were fired from the same weapon. He further related that the slug found in the victim's car and the slug found in the matted hair were fired by the same weapon. It is also readily apparent from these facts that the jury concluded that the pistol in possession of the defendant the day before the disappearance of the victim was the death weapon.

The defendant was seen in the vicinity of where the remains were found after the disappearance of the victim and admits to being there with his wife and having entered the woods to use the bathroom.

It appears the defendant and the victim on the night of May 2, 1972, were supposed to go to Lone Mountain with some tires.

The defendant was not employed and apparently without funds for he was trying to sell the pistol and keep what amount over the $50 he sold the gun for.

He paid Hurst $40 for the gun on May 3, 1972, and testified he owed him $10 more on the gun.

The defendant, testifying in his own behalf, denied the killing and related that he had sold the gun to an unknown party with whom he had been acquainted two or three years before. He was corroborated as to this sale by his girl friend with whom he had been planning a vacation in Florida.

His wife testified that, on the night of May 2, 1972, the defendant was at home. His girl friend corroborates this aspect. However, a state's witness, who drove around with the girl friend on the night of May 2, testified that the defendant's car was not at his home.

The defendant, by his own admission, was with the victim late in the day of the disappearance.

It is not our prerogative to reevaluate the evidence that we have narrated which we think supports the jury's verdict of guilty. See State v. Grace, Tenn., 493 S. W.2d 474. It is true that there are diametrically opposed versions of fact in this record as there are in most all lawsuits. It is the jury's province to resolve these conflicts. See Holt v. State, 210 Tenn. 188, 198, 357 S.W.2d 57. They have chosen to disbelieve the defendant's version that he had sold the .25 caliber automatic. This rejection places the death weapon in the hands of the defendant. That verdict has also rejected his version that he was home on the night that the decedent disappeared. It accredits the state's theory that the defendant and the deceased were together on the night of May 2, and that the defendant shot and killed the decedent and robbed him of his money. The defendant paid Hurst $40 for the pistol on May 3. We think that the jury could logically conclude from the fact that defendant was in sole possession of the death weapon that he shot and killed the decedent. We think, as

we stated in Hicks v. State, Tenn.Cr.App., 490 S.W.2d 174, that these facts as enumerated point the finger of guilt unerringly to the defendant. It is true, as is indicated by the defendant, that we must be satisfied here beyond a reasonable doubt of defendant's guilt. See Crawford v. State, 225 Tenn. 478, 470 S.W.2d 610, 612. The Crawford case appears to be at odds to the rule governing circumstantial evidence cases found in Chadwick v. State, 189 Tenn. 256, 225 S.W.2d 52; Ford v. State, 184 Tenn. 443, 451, 201 S.W.2d 539; Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895; Jamison v. State, 209 Tenn. 426, 354 S.W.2d 252; Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105, which require an evaluation on the preponderance of the evidence. However, under either rule we think the evidence supports the verdict.

In closing, the state calls our attention to the circumstance that defendant was seen in the vicinity of the remains and quotes from Dietzel v. State, 132 Tenn. 47, 78, 177 S.W. 47, 55:

"What could have drawn the plaintiff in error to this lonesome lane on the days following the crime, except that mysterious and proverbial force that impels a murderer to return to the scene of his iniquity, or to the place where he has hidden his victim? Why should the prisoner have haunted this vicinity, as long as he was free, unless like that other murderer:

'All night he lay in agony,
     From weary chime to chime,
With one besetting horrid hint,
     That racked him all the time;
A mighty yearning like the first
     Fierce impulse unto crime.

One stern, tyrranic thought, that made
     All other thoughts its slave;
Stronger and stronger every pulse
     Did that temptation crave,
Still urging him to go and see
     The Dead Man in his grave.' "

This circumstance by itself is that and that alone and conclusive of nothing but that

fact. When, however, all the circumstances as narrated and a circumstance of this kind are gathered and considered together, we are satisfied the defendant has not shown here that the evidence is insufficient.

We accordingly affirm this judgment.

OLIVER, J., concurs.

GALBREATH, Judge (dissenting).

I would reverse the conviction of the plaintiff in error for murder in the second degree because, in my opinion, it is not supported by the evidence.

The only proof connecting the defendant with the murder of the victim, Glen Buckner, is that a shell casing alleged to have been fired from a pistol said to have been loaned to the defendant by an informant and later found by a sheriff who, the record strongly suggests, was involved in illegal activities involving rival bootlegging factions in Claiborne County balistically matched those found at the murder scene. It would be so simple for this type of evidence to be planted that a more than reasonably hypothesis other than guilt is suggested. Under such circumstances I cannot say that guilt has been established.

This is a circumstantial evidence case and the rule is well settled that the evidence must be consistent with the guilt of the defendants and inconsistent with their innocence, and sufficiently strong to overcome every other reasonably hypothesis except that of guilt. Marie v. State, 204 Tenn. 197, 319 S.W.2d 86.

The informant, a bootlegger by the name of Hurst, told the sheriff the day after the victim's bloodstained automobile, used in his bootlegging activities, was found abandoned that he had loaned the pistol to the defendant, a competing bootlegger. He also told the sheriff that he had test fired the pistol and the sheriff was able to locate the casing. Both the informant and the victim, Glen Buckner, had been raided by

the sheriff earlier on the day Buckner disappeared while delivering whiskey. Both law violators met with the sheriff later that day for a "discussion" and both the sheriff and the surviving bootlegger, Hurst, pleaded the Fifth Amendment when asked about that meeting. Although from a constitutional viewpoint I cannot fault the sheriff and his bootlegging companion from hiding proof that would tend to incriminate them behind the Fifth Amendment, I cannot bring myself to accord to such witnesses that degree of trustworthiness they must have before a man should be deprived of his life or liberty on their unsupported claims that lent authenticity to the demonstrative evidence of the shell casing.

The victim's body was found six months after he disappeared. No particular signif-icance is found in the only other factual matter relied on by the State to connect the defendant with the crime, consisting of testimony that the accused man was observed on the side of the road about 400 yards from where the body was later found. He adequately explained his reason for being there. While appreciative of the majority's poetic reminder that some murderers do perhaps return to the scene of their crime, I would submit that in the experiences of this Court it is to be observed that far more often the modern-day killer voids the locale of his misdeed. Far from being a circumstance suggesting guilt, to me the fact that the defendant had no reluctance to be seen near the place where the body was concealed, is suggestive more of innocence.

I would remand for a new trial.