Tommy **FERGUSON**, Plaintiff-in-Error,

v.

**STATE of Tennessee**, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

July 1, 1975.

Certiorari Denied by Supreme Court
Sept. 8, 1975.

O. W. McKenzie and J. W. McKenzie, Dayton, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Michael E. Terry, Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Pikeville, for defendant-in-error.

## OPINION

DWYER, Judge.

The plaintiff-in-error timely appeals from his conviction for committing the offense of murder in the second degree, with punishment of confinement for not less than ten nor more than fifteen years. We will refer to plaintiff-in-error as the defendant hereafter.

The decedent, a Jerry Campbell, the defendant and their families all had previously resided in the Cove Road area, Cumberland Mountain, in Bledsoe County. The Campbell family had moved from the

mountain to the Cold Springs community of Bledsoe County and were residing there when this homicide occurred. The record reflects that the Fergusons and the Campbells had been "hollering" distance neighbors before animosities between the families caused the Campbells to move.

On the afternoon of October 27, 1973, Johnny Campbell and Jerry Campbell, his brother, were in Aults Tavern in North Bledsoe County. The defendant's brother and the three of defendant's sons and a cousin of the decedent entered the tavern. A melee occurred in which Johnny Campbell was shot between the eyes and William Ferguson was purportedly shot in the ear.

The aforementioned occurrence precipitated a meeting between the Campbells and the Fergusons at the Bledsoe County Hospital with the aftermath of Jerry Campbell being shot and killed by a .32 caliber automatic wielded by the defendant.

The evidence further establishes when the defendant arrived at the hospital and alighted from his car he was struck by a shotgun blast suffering superficial wounds to the face, neck, chest, shoulder and abdomen by an unknown assailant.

The defendant then entered the hospital where he shot and killed Jerry Campbell. When Johnny Campbell, who was in the emergency room, heard the shooting he obtained a pistol from his mother's purse and fired shots at the defendant who fled and locked himself in the bathroom of a patient where he was arrested. No weapon was found on his person or in the bathroom.

There is evidence by state's witnesses which reflects the defendant was armed when he entered the hospital and that he shot the unarmed decedent and that he stated, "I'll kill every damn one of you," in reference to the Campbells. There is further evidence that, after this shooting, the defendant entered a patient's room, pistol in hand, and stated, "He shot me, I shot him."

Later, at the hospital while investigation was underway, the lights went out and the sheriff, on information, again searched the defendant's car which had remained parked in front of the hospital, and the death weapon and a .22 pistol were found under the back seat.

There were six people arrested as a result of this tragedy. A total of five pistols were confiscated by the sheriff, along with two shotguns found in the defendant's car, and a sack containing .32, .22 and shotgun shells.

The defendant did not testify.

There was evidence offered by the defense which contradicts the fact that the defendant was armed when he entered the hospital and that the decedent and his father were armed and started beating the defendant, and in the ensuing struggle the guns went off, resulting in Jerry Campbell's demise.

■ The verdict of the jury has accredited the theory of the state, that is, that the defendant, with a pistol, shot and killed the unarmed decedent. We will not disturb this fact finding of the jury unless the evidence preponderates against his guilt and in favor of his innocence, see *McBee v. State,* 213 Tenn. 15, 19, 20, 372 S.W.2d 173. We think the evidence is sufficient to support the verdict. The defendant was armed; he was seen to shoot the decedent; he stated he meant to shoot the rest of them (Campbells); he stated "he shot me, I shot him." The use of a deadly weapon supports the requisite malice necessary to support murder in the second degree. See *Witt v. State,* 46 Tenn. 5, 8; *Foster v. State,* 74 Tenn. 213, 216.

His use of the pistol coupled with his statements amply support the jury's finding that his acts evinced a malignity of heart and spirit when he fired the fatal shot. The assignments relating to the evidence are accordingly overruled.

The next assignment he urges the trial court erred in overruling his motion to quash the indictment because it was found-

ed on hearsay testimony and did not have the proper prosecutor as required by law.

 We think his motion being made after the jury was sworn came too late, see *Brooks v. State,* 156 Tenn. 451, 453, 454, 2 S.W.2d 705. The sufficiency of the evidence before the grand jury, as raised here, has been preempted, see *Parton v. State,* 2 Tenn.Cr.App. 626, 455 S.W.2d 645, 648. The question presented here is properly raised by a plea in abatement and not a motion to quash, see *Wireman v. State,* 146 Tenn. 676, 680, 244 S.W. 488; *Smith v. State,* Tenn.Cr. App., 517 S.W.2d 757, 759. The sheriff was listed on the indictment as the prosecutor, but that duty of the district attorney is dispensed with in cases as here of willful murder, see T.C.A. 40–1705(2). These assignments are without merit and overruled.

 In unbriefed assignments, see Rule 17 of this court, he contends the court erred in allowing Joe Helton, T.B.I. agent, and Pete Bauldin, the investigator for the district attorney, to testify in rebuttal as to matters which should have been presented in the state's proof in chief. We find no abuse of the trial court's discretion in allowing this rebuttal testimony, see *Dezarne v. State,* 4 Tenn.Cr.App. 209, 470 S.W.2d 25, 27. These unbriefed assignments, see *Rockett v. State,* Tenn.Cr.App., 475 S.W.2d 561, 563, are overruled.

 In another unbriefed assignment, see Rule 17 of this court, he contends the court erred in allowing the district attorney to cross examine his witness Virgil Campbell about traffic accidents, misdemeanors and other charges. We find no error in view of prompt objection and the sustaining of these objections by the trial court, see *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188, 193. This assignment is overruled.

Lastly, he maintains there were such obvious discrepancies between the decedent father's testimony and state witness Gary Dishman that there was therefore no credible proof that he shot the decedent. The jury has, by its verdict, settled this issue of credibility and discrepancies in the testimony, see *Holt v. State,* 210 Tenn. 188, 197, 198, 357 S.W.2d 57. It must be remembered that both witnesses testified that the defendant shot the unarmed decedent. This assignment is without merit and is overruled.

The judgment of the trial court is affirmed.

O'BRIEN and DUNCAN, JJ., concur.