# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. EVERETT D. ROBINSON

**Appeal from the Circuit Court for Henry County**
**No. 12876     Julian P. Guinn, Judge**

———————

## No. W1999-01348-CCA-RE-CD - Decided April 7, 2000

———————

The Defendant, Everett Dale Robinson, appeals as of right from his conviction pursuant to a jury verdict of fourth offense driving under the influence (DUI). On appeal, he challenges only the sufficiency of the evidence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

WELLES, J., delivered the opinion of the court, in which TIPTON, J. and LAFFERTY, SR.J., joined.

Guy T. Wilkinson, Camden, Tennessee, for the appellant, Everett D. Robinson.

Paul G. Summers, Attorney General and Reporter, Tara B. Hinkle, Assistant Attorney General, Robert "Gus" Radford, District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was indicted by the Henry County Grand Jury for (1) driving under the influence (fourth offense); (2) driving while license is cancelled, suspended, or revoked; (3) violation of the "light law"; and (4) failure to appear. He pleaded guilty to driving while license is cancelled, suspended, or revoked and to violation of the "light law."[1] He was then tried on the remaining offenses, found guilty of DUI, and acquitted of failure to appear.

———————

[1]The "light law" with which the Defendant was charged and subsequently convicted pursuant to his guilty plea makes it unlawful for a vehicle, other than a motor vehicle, to travel upon the roadways of this state without a light attached to the upper left side of such vehicle from one-half hour after sunset until one-half hour before sunrise. See Tenn. Code Ann. § 55-9-401(a). However, we note as a matter of law that a violation of this section is a Class C misdemeanor. See id. § 55-9-401(d). Because the judgment reflects that the Defendant was convicted of a Class A misdemeanor instead of a Class C misdemeanor, we must remand the case for clarification or correction of the judgment.

At trial, Deputy Shawn R. Watson of the Henry County Sheriff's Department testified that around 9:00 p.m. on October 25, 1998, he was checking radar on Highway 641 South from Manleyville Road in Henry County. He was parked at a stop sign on Manleyville Road when the Defendant's vehicle approached him from behind. The Defendant passed Deputy Watson, and Deputy Watson noticed that the Defendant had a rear taillight out. Deputy Watson followed the Defendant for about a mile and observed the Defendant "crossing the centerline when he was cutting his corners." Deputy Watson said that the Defendant did this four or five times. He activated his blue lights, and the Defendant stopped about half a mile further.

Deputy Watson said that he approached the Defendant's vehicle and asked to see a driver's license. The Defendant could not produce a driver's license, so Deputy Watson obtained the Defendant's name and social security number instead. Deputy Watson testified that he noticed an odor of alcohol about the vehicle, and the Defendant had slurred speech and bloodshot eyes. There were also several beer cans strewn throughout the vehicle, most of which were empty.

Deputy Watson had the Defendant perform three field sobriety tests: the finger count, the one-legged stance, and the nine-step walk and turn. He testified that the Defendant performed "relatively well" on the finger count test but performed "poorly" on the other two tests. He explained that the one-legged stance requires a person to stand on one leg, maintain balance, and count at the same time. Normally, the person is asked to count from 1001 to 1030. He said that the Defendant lost his balance at "two" and "three" and then quit the test. For the walk and turn test, the person is asked to walk nine steps heel to toe with his or her hands down at the side, make a three-step pivot turn, and then walk nine steps back heel to toe. Deputy Watson said that the Defendant stepped off the line at steps seven and eight, that he did only two steps on the turn, and that he stepped off the line at steps four and five on the way back. He said that he asked the Defendant before administering the tests if the Defendant had any disabilities which would impede his performance, and the Defendant stated that he had a back problem, but he would attempt to perform the tests. On cross-examination, Deputy Watson was questioned about his training in administering field sobriety tests. He said that he had not been to DUI school, but he had received five and a half hours of DUI training at the Tennessee Law Enforcement Training Academy.

Deputy Watson placed the Defendant under arrest and transported him to the Henry County jail, where the Defendant attempted to perform a breathalyser test. The Defendant agreed to take the test, but the test did not register any results. Deputy Watson explained that the person must blow into the machine as hard as he or she can for about four seconds. He said that he explained this procedure to the Defendant, but the Defendant did not follow his instructions. Instead of blowing constantly for about four seconds, the Defendant stopped blowing and then blew again. Deputy Watson gave the Defendant the opportunity six times to blow into the machine but never got a sufficient breath sample to get any results. After the test failed to register results, the Defendant was charged with DUI.

The Defendant testified on his own behalf. He stated that he and a friend, Vince Mathis, went to Big Sandy that day to check on a house that was for rent, and then they went to Mr. Mathis's

girlfriend's house. They arrived at the girlfriend's house around 6:00 p.m. There, they each had two Zimas, which are alcoholic beverages similar to wine coolers. Ms. Collier, Mr. Mathis's girlfriend, cooked hamburgers and french fries, and they all ate dinner there. Around 9:00 that evening, the Defendant left to go to his son's house. He said that he was not impaired that evening and that he was able to operate the vehicle. He passed Deputy Watson and continued on toward his son's house. He saw Deputy Watson turn on the blue lights, so he stopped after he drove around a curve and found a "straight-a-way." He said that he told the officer his license was suspended and that he had drunk two Zimas that evening. He tried to perform the field sobriety tests and said that he thought he did "all right" on the walk and turn test. He said he told Deputy Watson that he had been in a car accident and had back problems as a result. When asked if his back problems could have affected his ability to perform the tests, the Defendant stated, "Well, maybe a little bit."

With respect to the breathalyser test, the Defendant stated that he tried to blow into the machine correctly but he had never blown on one before. On cross-examination, he was questioned about whether he had blown into a breathalyser machine in Benton County on April 10, 1989, in Carroll County on August 10, 1989, in Shelby County on November 21, 1992, and in Davidson County on October 30, 1995. The Defendant stated that he did not blow into a breathalyser machine on those dates.

Vince Mathis, the Defendant's friend, testified that on October 25, 1998, he and the Defendant were at his girlfriend's house. They arrived after 6:00, they each had two Zimas, and they ate hamburgers and french fries. Shortly after 9:00 that evening, the Defendant left to go to his son's house. Mr. Mathis stated that the Defendant was not impaired or unable to drive a vehicle that evening.

The Defendant first challenges the sufficiency of the convicting evidence. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find

particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

The Defendant was convicted of driving under the influence. The relevant statute, Tennessee Code Annotated § 55-10-401(a), provides as follows:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

The evidence in this case is sufficient to support the Defendant's conviction for driving under the influence because a rational juror could have concluded beyond a reasonable doubt that the Defendant drove an automobile while under the influence of alcohol. Deputy Watson testified that he observed the Defendant "cut his corners" four or five times, that he smelled an odor of alcohol about the Defendant's vehicle, that the Defendant's speech was slurred and his eyes were bloodshot, and that the Defendant performed "poorly" on two field sobriety tests.

Nevertheless, the Defendant argues that the evidence is insufficient because the arresting officer was not qualified to administer field sobriety tests, because a breathalyser reading was not obtained and because the jury was informed of the Defendant's prior DUI convictions. We first note that, with the exception of the breathalyser reading, the Defendant is actually challenging the admission of evidence rather than the sufficiency of the evidence. We also note that the Defendant did not object at trial to the officer's testimony regarding the field sobriety tests or to the questions relating to the Defendant's previous exposure to breathalyzer tests. Failure to make a contemporaneous objection waives consideration by this court of the issue on appeal. See Tenn. R.App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). Nevertheless, we conclude that the Defendant's contentions are meritless.

With the exception of the horizontal gaze nystagmus test, field sobriety tests are not scientific tests requiring testimony of a qualified expert pursuant to Tennessee Rule of Evidence 702. See State v. Murphy, 953 S.W.2d 200, 202-03 (Tenn. 1997); State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988). Thus, police officers generally do not need to be qualified as expert witnesses in order to testify about their administration and interpretation of field sobriety tests. See id.; State v. Christopher R. Hicks, C.C.A. No. 03C01-9602-CC-00064, 1997 WL 260069, at *1 n.1 (Tenn. Crim. App., Knoxville, May 13, 1997). In State v. Michael B. Propes, C.C.A. No. 03C01-9211-CR-00376, 1993 WL 263062 (Tenn. Crim. App., Knoxville, July 13, 1993), we found that a police officer who was trained in giving field sobriety tests by the police academy was properly allowed to testify about those tests. Id. at *2. Here, Deputy Watson testified that he received five and a half hours of DUI training at the police academy, although he had not been to DUI school. He also explained the purposes of the field sobriety tests that he asked the Defendant to perform, and

he informed the jury about the things the officers look for in the performance of those tests. Accordingly, Deputy Watson was properly allowed to testify about his administration and interpretation of the field sobriety tests performed by the Defendant.

Next, the Defendant contends that the evidence is insufficient because a breathalyser reading could not be determined. However, a defendant may be convicted of DUI based on either evidence of intoxication or evidence showing that the defendant had a blood-alcohol concentration of .10% or more. See Tenn. Code Ann. § 55-10-401(a). Because the Defendant's conviction was based on factors other than proof of his blood-alcohol content, the failure to obtain a breathalyser reading is simply one of the factors to be considered by the jury in its evaluation of the evidence.

Finally, the Defendant argues that he was convicted because the jury was "able to know" about his prior DUI convictions. During direct examination, the Defendant testified that he had never blown into a breathalyser machine before. After a bench conference during which the Defendant did not voice any objections, the State was permitted to ask the Defendant whether he had blown into such a machine in Benton County on April 10, 1989, in Carroll County on August 10, 1989, in Shelby County on November 21, 1992, and in Davidson County on October 30, 1995. The Defendant denied blowing into a machine on these dates. The Defendant now asserts that "[f]or all practical purposes, the jury knew he had previous DUI charges and more than likely thought he had convictions." The Defendant argues that his conviction was based on the evidence of the prior DUI convictions and not on the evidence of his intoxication on the date in question. We disagree.

Pursuant to Tennessee Rule of Evidence 608(b), specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility may not be proved by extrinsic evidence, but they may be inquired into on cross-examination concerning the witness's character for truthfulness or untruthfulness if probative of that truthfulness or untruthfulness. See Tenn. R. Evid. 608(b). In a similar factual situation, we held that this rule permitted the prosecutor to question the defendant about whether he had taken a breathalyser test on a specific occasion because the defendant denied having ever taken a breathalyser test. State v. Mark Summers, C.C.A. No. 03C01-9606-CR-00235, 1997 WL 785677, at *2 (Tenn. Crim. App., Knoxville, Dec. 4, 1997). We stated, "The questions posed to Appellant constitutes [sic] permissible impeachment within the scope of Tenn. R. Evid. 608(b) since the State merely asked a question of Appellant concerning a prior specific instance of conduct highly relevant to his credibility." Id. Like in Summers, we hold here that the questions asked of the Defendant were permissible impeachment because they concerned prior specific instances of conduct highly relevant to his credibility. While the questions posed to the Defendant likely affected the jury's determination of the Defendant's credibility, there is no evidence that they served as the basis for the Defendant's conviction. The Defendant's argument is without merit.

The judgment of the trial court is affirmed. However, the case is remanded for correction or clarification of the judgment convicting the Defendant, pursuant to his guilty plea, of violation of the "light law."