# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 17, 2000

## STATE OF TENNESSEE v. RONALD W. BYRD

### Appeal from the Criminal Court for Sullivan County
### No. S41,685    Phyllis H. Miller, Judge

---

### No. E2000-00118-CCA-R3-CD
### December 6, 2000

---

The Defendant, Ronald W. Byrd, was convicted of criminal trespass, a Class C misdemeanor. In this appeal as of right, he asserts that the evidence was insufficient to support the conviction. We hold that the evidence was sufficient to support the conviction, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J. and WILLIAM B. ACREE, JR., SP.J., joined.

Donald E. Spurrell, Johnson City, Tennessee, for the appellant, Ronald W. Byrd.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Greeley Wells, District Attorney General; and Robert H. Montgomery, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was charged with the offense of aggravated criminal trespass, a Class B misdemeanor. After a jury trial, he was found guilty of the lesser included offense of criminal trespass, a Class C misdemeanor. He was sentenced to thirty days in jail and received a $50.00 fine.

The proof at trial showed that on July 23, 1998, the Defendant telephoned Senator Fred Thompson's office in Blountville, Tennessee, and he spoke with Kathy Tipton, a case worker with Senator Thompson's office, regarding a grievance the Defendant had with the Department of Justice. The Defendant informed Ms. Tipton that he had been a postal worker in Colorado and that he was a whistle blower. He further told Ms. Tipton that he had written the Department of Justice a letter several years earlier, and he wanted Senator Thompson's assistance in determining why he had received no response. Ms. Tipton informed the Defendant that she would need him to sign a release so that she could get information about his letter from the federal agency. The Defendant responded

that "if he wrote anything else, he'd go to the commode and throw up. He was tired of letter writing." The conversation took several turns, with the Defendant at times becoming "intimidating" and telling Ms. Tipton that he did not care about her rules, regulations or procedures, while at other times being "compliant." The conversation ended with the Defendant saying that he would get Ms. Tipton whatever she needed.

Although Ms. Tipton had not previously had any contact with the Defendant, she had heard his name before. She had received an e-mail from Senator Thompson's Nashville office two days before which warned the employees to contact someone immediately if the Defendant made an appearance at any of the Senator's offices. After she ended the telephone conversation with the Defendant, Ms. Tipton contacted Lieutenant Doug Brewer of the Tri-Cities Airport Public Safety Department. Senator Thompson's office was located in the Tri-Cities Airport, and Ms. Tipton was the only employee there that day. She contacted Lt. Brewer because she was afraid the Defendant might show up at her office.

Ms. Tipton asked Lt. Brewer for a photograph of the Defendant, which Lt. Brewer was able to procure. Ms. Tipton told Lt. Brewer that she was afraid of the Defendant and that she did not want to meet with him. As a result, Lt. Brewer waited with Ms. Tipton in her office to see if the Defendant would arrive. About 2:30 that afternoon, Ms. Tipton saw the Defendant coming down the escalator. Lt. Brewer left the office to intercept the Defendant, and Ms. Tipton locked the door.

Lt. Brewer, who was dressed in a police uniform, approached the Defendant and asked him to identify himself, which he did. The Defendant was carrying a manilla envelope packet, and he told Lt. Brewer that he wanted to deliver the packet to Ms. Tipton. Lt. Brewer testified that he told the Defendant that Ms. Tipton did not want to meet him and that she was afraid of him, and he offered the Defendant two alternatives to meeting with Ms. Tipton. He said that he told the Defendant he would deliver the packet to Ms. Tipton and let the Defendant watch through the glass window, or the Defendant could mail the packet to Ms. Tipton. The Defendant refused to accept either option; he told Lt. Brewer that he wanted to exercise his constitutional right to speak to his representative. Lt. Brewer said that he informed the Defendant that a personal meeting "was not going to happen because she was afraid." When the Defendant continued to assert his desire to meet Ms. Tipton, Lt. Brewer asked the Defendant to leave. Lt. Brewer testified that the Defendant then told him, "I was violating his civil rights, [and] that he would have me arrested." Lt. Brewer again asked the Defendant to leave, and the Defendant refused. At this point, Lt. Brewer arrested the Defendant. Lt. Brewer said that the Defendant made no attempt to leave prior to being arrested, and he did not believe that the Defendant had any intentions of leaving without personally delivering the packet to Ms. Tipton.

The Defendant testified at trial on his own behalf. For the most part, he confirmed the events described by Ms. Tipton and Lt. Brewer. However, he claimed that while Lt. Brewer informed him that Ms. Tipton did not wish to speak with him, Lt. Brewer never told him that Ms. Tipton was afraid of him. He said that he had no reason to believe Ms. Tipton would be afraid of him. The Defendant testified that he felt he had a right to be in a public place and that he was exercising his constitutional

right to file a grievance with the Senator's office. He was surprised when he was arrested. He testified that he never directly said, "I'm not leaving." However, he admitted that he would not accept any of Lt. Brewer's options. He asserted that it was his right to hand-deliver the package, and that is what he wanted to do.

On cross-examination, the Defendant admitted that he had been convicted of attempted aggravated kidnapping in Sullivan County four months earlier, although he described the conviction as "railroading through this politically charged case." He also admitted that he had contacted three different senators and one congresswoman in Colorado about his grievance, as well as Congressman Jenkins' office in Tennessee. He said that he had received no resolution of his problem. He was very angry that he had received no help from these offices, and he stated, "I figured that there had to be something going on for people to flat out deny that there was something wrong with what was going on with a whistle blower and a nonunion member who was being rather shabbily treated, like crimes and other activities." He said that he hoped Ms. Tipton was a "disinterested party" who would be interested in helping him.

On appeal, the Defendant challenges the sufficiency of the convicting evidence. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

For the Defendant to be convicted of criminal trespass, the State had to prove that the Defendant entered or remained on property knowing that he did not have the owner's effective consent to do so. See Tenn. Code Ann. § 39-14-405(a). Knowledge that a person does not have the owner's effective consent to enter or remain on property may be inferred where notice against entering or remaining is given by "[p]ersonal communication to the person by the owner or by someone with apparent authority to act for the owner." Id. § 39-14-405(a)(1). It is a defense to the

offense of criminal trespass if the property was open to the public when the person entered and remained, if the person's conduct did not substantially interfere with the owner's use of the property, and if the person immediately left the premises upon request. Id. § 39-14-405(b).

Looking at the evidence in the light most favorable to the State, we conclude that a rational jury could have easily found the existence of the elements of criminal trespass beyond a reasonable doubt. Although the Defendant lawfully entered a public building, he remained on the premises after being told twice by Lt. Brewer to leave. Lt. Brewer, who was a public safety officer at the airport and who was wearing his uniform, had the apparent authority to act on behalf of the owner of the airport. Because the Defendant did not leave immediately upon request by Lt. Brewer, the statutory defense was inapplicable. Therefore, the evidence was sufficient to support the conviction.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE