IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 17, 2000

**STATE OF TENNESSEE v. JOHN LEE DOCKERY**

**Appeal from the Criminal Court for Knox County**
**No. 66590     Richard Baumgartner, Judge**

---

**No. E2000-00753-CCA-R3-CD**
**December 14, 2000**

---

The Defendant, John Lee Dockery, was convicted after a bench trial of fourth offense driving under the influence (DUI) and driving on a revoked license. In this appeal as of right, the Defendant argues that the trial court erred by admitting into evidence statements the Defendant made to the arresting officer before <u>Miranda</u> warnings were given and that the evidence was insufficient to support the DUI conviction. We conclude that the statements made by the Defendant were properly admitted and that the evidence was sufficient to support the convictions. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and WILLIAM B. ACREE, JR., SP.J., joined.

Glen B. Rutherford, Knoxville, Tennessee, for the appellant, John Lee Dockery.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Steve Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Officer Danny Boone testified at trial that on September 17, 1997, he was a police officer with the Knoxville Police Department. At approximately 7:20 p.m. on that date, Officer Boone observed the Defendant operating a blue 1980 Chevrolet northbound on South Haven Road in Knox County. As the Defendant reached the intersection with McClung, "he stopped the car and then executed a right-hand turn onto McClung." The Defendant's stop was a sudden stop. The three cars behind the Defendant almost collided in an attempt to avoid striking the Defendant's car. Officer Boone was directly behind the Defendant's car.

Officer Boone testified that he activated his blue lights, and the Defendant stopped. Upon approaching the Defendant's vehicle, Officer Boone detected the odor of an alcoholic beverage. He asked the Defendant to step out of the car, which he did. Officer Boone noticed that the Defendant's speech was slurred and his eyes were bloodshot. In response to questions by Officer Boone, the Defendant stated that he had consumed about four beers around 2:00 p.m. that day and an additional quart of beer around 4:00 p.m. that day: The Defendant also stated that he had taken several types of medication that day: he said he took "one thousand milligrams of an anti-inflammatory pill, one blood pressure pill, one diabetic pill, and half a pain pill."

Officer Boone noticed that the Defendant was unsteady on his feet, but the Defendant told him that he had had knee surgery the month before. Because of the knee surgery, Officer Boone did not ask the Defendant to perform any field sobriety tests involving balance or walking. The Defendant was asked to recite the alphabet from E to T, but he told Officer Boone "that he couldn't even begin that test." Officer Boone also testified that when he asked the Defendant for his license, the Defendant fumbled excessively while getting his license out. The Defendant was offered a breathalyser test, which he refused. Officer Boone offered his opinion that the Defendant was under the influence of an intoxicant and that his ability to operate a motor vehicle was impaired.

The Defendant testified that he stopped his car quickly because he thought he saw an animal dart out in front of his car. Once he saw Officer Boone's blue lights, he stopped at his next opportunity. The Defendant said that he had had knee surgery approximately a month before this time, for which he was receiving physical therapy. He testified that around 5:00 that morning he drank about a quart of beer, but he had not had any alcohol since that time. He denied telling Officer Boone that he drank four beers that afternoon.

The Defendant testified regarding four different medications which he was taking. He said he was taking blood pressure medication, diabetic medication, an anti-inflammatory, and hydrocodone for pain. The Defendant said that he only took the hydrocodone when he was going to physical therapy because it was habit forming. He took the hydrocodone about three hours before he was stopped that day. He also explained that if he had consumed any beer after taking his medication that afternoon, it would have made him sick. The Defendant testified that he was not intoxicated when he was stopped by Officer Boone and that his ability to operate a motor vehicle was not impaired in any way.

STATEMENTS TO OFFICER BOONE

The Defendant argues that the trial court should not have admitted the statements he made to Officer Boone regarding drinking alcohol that afternoon because Officer Boone failed to advise him of his Miranda rights. In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use

of procedural safeguards effective to secure the privilege against self incrimination. <u>By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way</u>. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

Id. at 444 (emphasis added). The Defendant thus asserts that because he was not informed of the rights set forth in Miranda prior to Officer Boone asking him any questions, his statements are inadmissible.

However, the Miranda warnings must only be given when a defendant is subject to custodial interrogation. See id. "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). The test is an objective test which asks "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 444 (1984); see also State v. Anderson, 937 S.W.2d 851, 854 (Tenn. 1996).

In McCarty, the Supreme Court considered whether the roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered "custodial interrogation," and it held that "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." McCarty, 468 U.S. at 440. In so doing, it noted that "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself." Id. at 438-39. It found a traffic stop to be more analogous to a "Terry stop" than to a formal arrest; in a "Terry stop," if an officer has reasonable suspicion that a person has been involved in or is about to be involved in criminal activity, the officer may briefly detain that person in order to investigate the circumstances which provoked that suspicion. Id. at 439; see also Terry v. Ohio, 392 U.S. 1 (1968); United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." McCarty, 468 U.S. at 439. The Supreme Court thus concluded that the statements of the defendant, made after being stopped in his vehicle and in response to questioning by a police officer, that he had been drinking and smoking marijuana, were admissible because the defendant was not "in custody." Id. at 441-42; see also State v. Snapp, 696 S.W.2d 370, 371 (Tenn. Crim. App. 1985).

We similarly conclude that the statements of the Defendant in this case that he had been drinking were admissible because the Defendant was not "in custody" when they were made. The Defendant was subjected to a routine traffic stop, and Officer Boone's questions were brief ones regarding whether the Defendant had been drinking that day. This type of investigative questioning does not give rise to the determination that a defendant is "in custody" for <u>Miranda</u> purposes. <u>See id.</u>

## SUFFICIENCY OF THE EVIDENCE

The Defendant also challenges the sufficiency of the convicting evidence. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. <u>McBee v. State</u>, 372 S.W.2d 173, 176 (Tenn. 1963); <u>see also</u> <u>State v. Evans</u>, 838 S.W.2d 185, 191 (Tenn. 1992) (citing <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1976), and <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977)); <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982); <u>Holt v. State</u>, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." <u>Tuggle</u>, 639 S.W.2d at 914 (citing <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. <u>Evans</u>, 838 S.W.2d at 191 (citing <u>Cabbage</u>, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. <u>Tuggle</u>, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Looking at the evidence in the light most favorable to the State, the evidence establishes that the Defendant stopped his vehicle suddenly, almost causing an accident. When Officer Boone approached the Defendant, he noticed an odor of alcohol. Officer Boone also observed that the Defendant's speech was slurred and his eyes were bloodshot. The Defendant stated that he had consumed four beers around 2:00 p.m. and another quart of beer around 4:00 p.m. The Defendant had also taken four different kinds of medication, including hydrocodone. He fumbled when attempting to retrieve his license. The Defendant stated that he "could not even begin" to recite the alphabet from E to T, and he refused a breathalyser test. We conclude that this evidence supports the trial court's conclusion that the Defendant was driving a motor vehicle while under the influence of an intoxicant. <u>See</u> Tenn. Code Ann. § 55-10-401(a)(1).

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE