# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
November 7, 2000 Session

## STATE OF TENNESSEE v. JUDY MARTIN

**Appeal from the Circuit Court for Carroll County**
**No. 99CR-1429    C. Creed McGinley, Judge**

---

### No. W2000-01472-CCA-R3-CD - Filed January 23, 2001

---

The Defendant was convicted by a jury of introducing drugs into a penal institution.  She was sentenced to three years incarceration, suspended after ninety days.  In this appeal as of right, the Defendant challenges the sufficiency of the evidence and her term of confinement.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Terry J. Leonard, Camden, Tennessee, for the appellant, Judy Martin.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant, Judy Martin, was indicted for introducing drugs into a penal institution and convicted of that offense by a jury.  After a hearing, the Defendant was sentenced as a Range I, standard offender to three years incarceration, suspended after ninety days of confinement.[1]  In this appeal as of right, the Defendant challenges the sufficiency of the evidence and contends that her sentence should include no incarceration.  Upon our review of the record and relevant legal authority, we affirm the trial court's judgment.

The proof at trial established that, in July 1999, the Defendant and Jennifer Edgin came to the Carroll County Jail to visit Adam Martin, the Defendant's son and Edgin's boyfriend.  The two

---

[1]The Defendant was also fined $5,000.

women entered the jail carrying two plastic grocery bags. One of the bags contained miscellaneous items. The other bag contained ten packages of Red Man chewing tobacco. Jailer Glenda Hubbard met the two women on the first floor and escorted them up to the second floor where the inmates were housed. The Defendant gave Hubbard the two plastic bags. Hubbard signed the women in and then took the two bags to Chief Deputy Terry Dicky to be searched.

Standard procedure called for Hubbard to search the bags, and she testified that she had previously searched articles that the Defendant had brought to the jail. At that time, jail personnel did not usually open tobacco pouches to search the contents. In this instance, however, Sheriff Bendel Bartholomew had heard a rumor that "[s]ome visitors for Adam Martin were fixing to try to get some drugs into him." Accordingly, the Sheriff arranged for a thorough search of anything brought in by Martin's visitors. The Sheriff testified that there was an ongoing problem with people smuggling contraband into the jail.

When the contents of the two plastic bags were searched, some pills and plant material were found inside the Red Man tobacco pouches. These substances were sent to the Tennessee Bureau of Investigation crime laboratory for testing. The results indicated that the plant material was 1.9 grams of marijuana and that three of the pills were diazepam, a controlled substance. The remaining pills contained no controlled substances.

After the bags were searched, the Defendant and Edgin were questioned and arrested at the jail. Sheriff Bartholomew testified that the Defendant told him that "she had got it from some black man in the parking lot at McDonald's." Investigator David Bunn interviewed Edgin and testified that she acknowledged knowing about the drugs. He stated that "[s]he indicated that [the Defendant] and [she] were there at the home when [another] person put these items into this Red Man." Edgin also signed a written statement in two parts that set forth the following:

> Me & Adam's mother, Judy[,] live together & we left & went to E.
> W. James in Dresden around 7:00 p.m. I bought cigarettes. I don't
> know what Judy bought[;] she went thr[ough] another line. The first
> time I saw the Redman [sic] packs was at the Carroll Co[unty] Jail
> when I got them out of the van.
> [signed] Jennifer Edgin

> Judy bought Redman [sic] at E. W. James & we went back to the
> house. I knew that valiums & tylenol p.m. were in the bag. But I
> didn't put them in there.
> [signed] Jennifer Edgin

Edgin subsequently pled guilty to introducing drugs into a penal institution.

Edgin testified that she had been living with the Defendant at the time because they were friends. Edgin had earlier been arrested with the Defendant's son Adam on drug charges. The Defendant had posted Edgin's bond on the condition that she enter drug rehabilitation. Edgin did

so, but quit before completing the program. The Defendant picked her up late on the night after she left the rehabilitation facility and took Edgin back to the Defendant's home. The next day, Edgin spoke with Adam on the phone. She testified that he told her "to meet this man at McDonald's" to pick up some items for another inmate. She testified that she knew some of the items were illegal, but stated that the Defendant was not aware of this. Edgin also testified that the man she was supposed to meet -- whom she did not know -- called her after she spoke with Adam. She knew from this conversation about the diazepam but not, she said, about the marijuana.

Edgin explained that, on their way to visit Adam in jail that evening, she and the Defendant stopped at the E. W. James store to buy cigarettes and, pursuant to her earlier instructions, five bags of Red Man tobacco. Edgin bought the cigarettes, and the Defendant bought ten bags of Red Man. The cigarettes were placed in one bag and the Red Man in another. The two women then drove to the designated McDonald's and pulled up alongside a car with a black man sitting in it. Edgin handed the man the bag containing the Red Man and, she testified, "[h]e put the rest of the stuff in there, apparently the drugs." The man then handed the bag back to her. They did not converse. Edgin did not open the Red Man pouches after getting the bag back; she testified that there had not been any drugs in the bag when they got to McDonald's. After their encounter at McDonald's, the Defendant and Edgin drove to the jail. Edgin testified that her memory of these events was not completely clear because she had been "high" during this time.

The Defendant testified that she did not know about the drugs. She stated that, on their way to the jail, Edgin told her they needed to stop and get five bags of Red Man for another inmate. The Defendant bought ten bags because, she explained, that was the limit. She stated that she had previously bought things for other inmates. After she bought the Red Man, the Defendant testified, Edgin told her to stop at the McDonald's to "pick up some other things for whoever." The Defendant drove to the McDonald's, pulled up next to a car with a black man sitting in it, and Edgin handed him the bag containing the Red Man. After a short time the man returned the bag to Edgin. Neither of the women conversed with the black man. The Defendant then drove to the jail with Edgin.

The Defendant testified that she knew the jail's procedure for searching articles that were brought in. She stated that the bag containing the Red Man was not for her son, but for another inmate. She explained that she had previously delivered to different inmates items that were given to her by others, without knowing what was being delivered or by whom. She denied knowing that the Red Man pouches contained drugs.

## SUFFICIENCY OF THE EVIDENCE

The Defendant contends that the evidence is not sufficient to support her conviction. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372

S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, this Court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Likewise, should this Court find particular conflicts in the trial testimony, we must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. This Court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836).

The Defendant was convicted of introducing controlled substances into a penal institution. See Tenn. Code Ann. §39-16-201(a)(1). The elements of this offense are that the accused

> [k]nowingly and with unlawful intent take, send or otherwise cause
> to be taken into any penal institution where prisoners are quartered or
> under custodial supervision any . . . intoxicants, legend drugs, or any
> controlled substances found in chapter 17, part 4 of this title.

Id. Diazepam and marijuana are both controlled substances. See Tenn. Code Ann. §§ 39-17-402(4), -412(c)(14), -415(1).

The proof that the Defendant took controlled substances into a penal institution[2] is undisputed. The only issue is whether she did so "knowingly and with unlawful intent." The Defendant contends that the State did not prove these elements beyond a reasonable doubt. We respectfully disagree.

The proof established that the Defendant knew what the jail's searching policies were. At the time of her visit, the policy was not to search inside tobacco pouches. Thus, the jury could have reasonably inferred that the Defendant delivered the drugs inside the tobacco pouches with the assumption that they would not be found there.

The Defendant's and Edgin's stories that an unidentified black man tampered with or switched the pouches is one which the jury was entitled to reject. The jury was further entitled to

---

[2]This Court has recently held that a county jail is a penal institution within the meaning of this statute. See State v. Charles E. Kilpatrick, ,2000 WL 804672, at *1 (Tenn. Crim. App., Nashville, June 23, 2000).

reject Edgin's claim that, while she knew about the drugs, her friend and benefactor the Defendant did not.

The jury's determination of the Defendant's state of mind at the time she brought the bag containing the drugs into the jail depended on whether it believed her and/or Edgin. That is, this issue was a matter of credibility: a matter which this Court cannot reevaluate. There was sufficient proof to support the jury's verdict, and this issue is therefore without merit.

## SENTENCING

The Defendant next complains about her sentence. While her brief is unclear, she appears to be arguing that the trial court erred by not granting her an alternative sentence and by sentencing her to a period of confinement. The Defendant was sentenced as a Range I, standard offender. Because she was convicted of a Class C felony, see Tenn. Code Ann. § 39-16-201(b), her sentencing range was three to six years. See id. § 40-35-112(a)(3). The trial court applied no enhancement factors and sentenced the Defendant to the minimum three year term. The only other issue before the trial court was the manner of service.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

As recognized by the trial court, the Defendant was "presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). The trial court ordered the Defendant to serve ninety days in confinement with the remainder of her sentence to be served on supervised probation. "Split confinement" such as this is considered an alternative sentence. See, e.g., State v. Bingham, 910 S.W.2d 448, 455-57 (Tenn.

Crim. App. 1995). The Defendant's contention that the trial court erred by not granting her an alternative sentence is therefore without merit.

We turn now to the Defendant's contention that she should not have been sentenced to serve any time in confinement, that is, that she should have been granted full probation. While the trial court correctly observed that the Defendant was eligible for full probation, see Tenn. Code Ann. § 40-35-303(a), the judge determined that he would be "wrong . . . to suspend this sentence in its entirety." The judge noted that the Defendant's sentence should serve "as a deterrent to others because you cannot run these penal institutions with people smuggling contraband in and out at will, whether it's firearms or drugs or whatever." The court further noted that "the gravity of [the Defendant's] act simply cannot be overlooked."

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his or her background and social history, his or her present condition, including physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The burden is on the defendant to show that the sentence he or she received is improper and that he or she is entitled to probation. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A period of confinement is appropriate where the trial court deems it "necessary to avoid depreciating the seriousness of the offense" or where it "is particularly suited to provide an effective deterrence to others likely to commit similar offenses." Tenn. Code Ann. § 40-35-103(1)(B). It is also appropriate where "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Id. § 40-35-103(1)(C).

To sentence a defendant to a period of incarceration based on the need for general deterrence, there must be some evidence in the record which indicates "a need within the jurisdiction to deter individuals other than the appellant from committing similar crimes." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). "A finding that the appellant's sentence will have a deterrent effect cannot be merely conclusory." Id. However, this Court will not set aside a sentencing court's findings of fact after a hearing unless the evidence in the record preponderates against them. Id. at 462. In this case, Sheriff Bartholomew testified at the trial that there was an ongoing problem with people smuggling contraband into the Carroll County Jail. During the sentencing hearing the trial court twice indicated its concern with deterring people from this smuggling activity. The evidence does not preponderate against the court's finding that there was a need to deter others from committing this offense. We note that our supreme court has recently recognized that, under certain circumstances, the need for deterrence alone may be sufficient to justify incarceration. See State v. Hooper, 29 S.W.3d 1, 14 (Tenn. 2000).

The trial court did not make a finding that measures less restrictive than confinement had recently been applied unsuccessfully to the Defendant, but the record supports this basis for confinement as well. At the time she committed the instant offense, the Defendant was on pretrial

diversion for misdemeanor reckless driving and felony accessory after the fact. Clearly, this award of prosecutorial largesse was unsuccessful in convincing the Defendant to refrain from further criminal activity. Accordingly, a period of confinement is supported on this basis as well.

Finally, the trial judge's findings implied that he did not find the Defendant a credible witness. He referred to the man at McDonald's, whom the Defendant blamed as responsible for the drugs, as "a phantom third party . . . which kind of defies belief." Lack of candor and credibility are indications of a defendant's low potential for rehabilitation and support the imposition of a short period of confinement. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

The record supports the trial court's sentencing decisions, and this issue is therefore without merit. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE